## LEWIS v. UNITED STATES.

No. 36.  Argued October 17, 1966.—Decided December 12, 1966.

*S. Myron Klarfeld* argued the cause and filed a brief for petitioner.

*Ralph S. Spritzer* argued the cause for the United States.  With him on the brief were *Solicitor General Marshall, Assistant Attorney General Vinson, Nathan Lewin, Beatrice Rosenberg* and *Sidney M. Glazer.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

The question for resolution here is whether the Fourth Amendment was violated when a federal narcotics agent,

by misrepresenting his identity and stating his willing-
ness to purchase narcotics, was invited into petitioner's
home where an unlawful narcotics transaction was con-
summated and the narcotics were thereafter introduced
at petitioner's criminal trial over his objection. We
hold that under the facts of this case it was not. Those
facts are not disputed and may be briefly stated as
follows:

On December 3, 1964, Edward Cass, an undercover
federal narcotics agent, telephoned petitioner's home to
inquire about the possibility of purchasing marihuana.
Cass, who previously had not met or dealt with peti-
tioner, falsely identified himself as one "Jimmy the
Pollack [sic]" and stated that a mutual friend had told
him petitioner might be able to supply marihuana. In
response, petitioner said, "Yes. I believe, Jimmy, I can
take care of you," and then directed Cass to his home
where, it was indicated, a sale of marihuana would occur.
Cass drove to petitioner's home, knocked on the door,
identified himself as "Jim," and was admitted. After
discussing the possibility of regular future dealings at
a discounted price, petitioner led Cass to a package lo-
cated on the front porch of his home. Cass gave peti-
tioner $50, took the package, and left the premises. The
package contained five bags of marihuana.[1] On Decem-
ber 17, 1964, a similar transaction took place, beginning
with a phone conversation in which Cass identified him-
self as "Jimmy the Pollack" and ending with an invited
visit by Cass to petitioner's home where a second sale
of marihuana occurred. Once again, Cass paid petitioner

---

[1] In the illegal narcotics trade, an average "bag" of marihuana
contains approximately five grams of marihuana. The five bags
transferred to the agent by petitioner, however, contained a quantity
of marihuana measuring 31.16 grams.

$50, but this time he received in return a package containing six bags of marihuana.[2]

Petitioner was arrested on April 27, 1965, and charged by a two-count indictment with violations of the narcotics laws relating to transfers of marihuana. 26 U. S. C. § 4742 (a). A pretrial motion to suppress as evidence the marihuana and the conversations between petitioner and the agent was denied, and they were introduced at the trial. The District Court, sitting without a jury, convicted petitioner on both counts and imposed concurrent five-year penitentiary sentences. The Court of Appeals for the First Circuit affirmed, 352 F. 2d 799, and we granted certiorari, 382 U. S. 1024.

Petitioner does not argue that he was entrapped, as he could not on the facts of this case; [3] nor does he contend that a search of his home was made or that anything other than the purchased narcotics was taken away. His only contentions are that, in the absence of a warrant, any official intrusion upon the privacy of a home constitutes a Fourth Amendment violation and that the fact the suspect invited the intrusion cannot be held a waiver when the invitation was induced by fraud and deception.

Both petitioner and the Government recognize the necessity for some undercover police activity and both concede that the particular circumstances of each case govern the admissibility of evidence obtained by stratagem or deception.[4] Indeed, it has long been acknowl-

---

[2] The six bags transferred in this second transaction contained 40.34 grams of marihuana.

[3] Compare *Sherman* v. *United States,* 356 U. S. 369 (1958), and *Sorrells* v. *United States,* 287 U. S. 435 (1932). See generally Mikell, The Doctrine of Entrapment in the Federal Courts, 90 U. Pa. L. Rev. 245 (1942).

[4] In oral argument before this Court, counsel for petitioner conceded that information obtained by the agent in the course of his

edged by the decisions of this Court, see *Grimm* v. *United States,* 156 U. S. 604, 610 (1895), and *Andrews* v. *United States,* 162 U. S. 420, 423 (1896),[5] that, in the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents. The various protections of the Bill of Rights, of course, provide checks upon such official deception for the protection of the individual. See, *e. g., Massiah* v. *United States,* 377 U. S. 201 (1964); *Trupiano* v. *United States,* 334 U. S. 699 (1948).

Petitioner argues that the Government overstepped the constitutional bounds in this case and places principal reliance on *Gouled* v. *United States,* 255 U. S. 298 (1921). But a short statement of that case will demonstrate how misplaced his reliance is. There, a business acquaintance of the petitioner, acting under orders of federal officers, obtained entry into the petitioner's office by falsely representing that he intended only to pay a social visit. In the petitioner's absence, however, the

---

general undercover investigation, together with the subject matter of the first telephone conversation between the agent and petitioner, provided probable cause for believing that a narcotics offense would be committed in petitioner's home and, therefore, would have supported the issuance of a search warrant. According to counsel, the agent's misrepresentations would not have vitiated a magistrate's determination of probable cause. Counsel further suggested that, if the agent had arrested petitioner at the latter's home and then had conducted a search incidental to the arrest, no constitutional problems would be presented.

[5] Former Chief Justice Hughes commented as follows upon the use of official deception in combating criminal activity:

"Artifice and stratagem may be employed to catch those engaged in criminal enterprises. . . . The appropriate object of this permitted activity, frequently essential to the enforcement of the law, is to reveal the criminal design; to expose the illicit traffic, the prohibited publication, the fraudulent use of the mails, the illegal conspiracy, or other offenses, and thus to disclose the would-be violators of the law." *Sorrells* v. *United States,* 287 U. S. 435, 441–442 (1932).

intruder secretly ransacked the office and seized certain private papers of an incriminating nature. This Court had no difficulty concluding that the Fourth Amendment had been violated by the secret and general ransacking, notwithstanding that the initial intrusion was occasioned by a fraudulently obtained invitation rather than by force or stealth.

In the instant case, on the other hand, the petitioner invited the undercover agent to his home for the specific purpose of executing a felonious sale of narcotics. Petitioner's only concern was whether the agent was a willing purchaser who could pay the agreed price. Indeed, in order to convince the agent that his patronage at petitioner's home was desired, petitioner told him that, if he became a regular customer there, he would in the future receive an extra bag of marihuana at no additional cost; and in fact petitioner did hand over an extra bag at a second sale which was consummated at the same place and in precisely the same manner. During neither of his visits to petitioner's home did the agent see, hear, or take anything that was not contemplated, and in fact intended, by petitioner as a necessary part of his illegal business. Were we to hold the deceptions of the agent in this case constitutionally prohibited, we would come near to a rule that the use of undercover agents in any manner is virtually unconstitutional *per se.* Such a rule would, for example, severely hamper the Government in ferreting out those organized criminal activities that are characterized by covert dealings with victims who either cannot or do not protest.[6] A prime example is provided by the narcotics traffic.

---

[6] "Particularly, in the enforcement of vice, liquor or narcotics laws, it is all but impossible to obtain evidence for prosecution save by the use of decoys. There are rarely complaining witnesses. The participants in the crime enjoy themselves. Misrepresentation by a police officer or agent concerning the identity of the purchaser of

The fact that the undercover agent entered petitioner's home does not compel a different conclusion. Without question, the home is accorded the full range of Fourth Amendment protections. See *Amos* v. *United States,* 255 U. S. 313 (1921); *Harris* v. *United States,* 331 U. S. 145, 151, n. 15 (1947). But when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant. Of course, this does not mean that, whenever entry is obtained by invitation and the locus is characterized as a place of business, an agent is authorized to conduct a general search for incriminating materials; a citation to the *Gouled* case, *supra,* is sufficient to dispose of that contention.

Finally, petitioner also relies on *Rios* v. *United States,* 364 U. S. 253 (1960); *Jones* v. *United States,* 362 U. S. 257 (1960); *McDonald* v. *United States,* 335 U. S. 451 (1948); and *Johnson* v. *United States,* 333 U. S. 10 (1948). But those cases all dealt with the exclusion of evidence that had been forcibly seized against the suspects' desires and without the authorization conferred by search warrants. A reading of them will readily demonstrate that they are inapposite to the facts of this case;

---

illegal narcotics is a practical necessity. . . . Therefore, the law must attempt to distinguish between those deceits and persuasions which are permissible and those which are not." Model Penal Code § 2.10, comment, p. 16 (Tent. Draft No. 9, 1959).

See also Donnelly, Judicial Control of Informants, Spies, Stool Pigeons and Agent Provocateurs, 60 Yale L. J. 1091, 1094 (1951); Note, 73 Harv. L. Rev. 1333, 1338–1339 (1960).

and, in this area, each case must be judged on its own particular facts. Nor is *Silverman* v. *United States,* 365 U. S. 505 (1961), in point; for there, the conduct proscribed was that of eavesdroppers, unknown and unwanted intruders who furtively listened to conversations occurring in the privacy of a house. The instant case involves no such problem; it has been well summarized by the Government at the conclusion of its brief as follows:

> "In short, this case involves the exercise of no governmental power to intrude upon protected premises; the visitor was invited and willingly admitted by the suspect. It concerns no design on the part of a government agent to observe or hear what was happening in the privacy of a home; the suspect chose the location where the transaction took place. It presents no question of the invasion of the privacy of a dwelling; the only statements repeated were those that were willingly made to the agent and the only things taken were the packets of marihuana voluntarily transferred to him. The pretense resulted in no breach of privacy; it merely encouraged the suspect to say things which he was willing and anxious to say to anyone who would be interested in purchasing marihuana."

Further elaboration is not necessary. The judgment is

*Affirmed.*

[For opinion of DOUGLAS, J., dissenting, see *post,* p. 340.]

MR. JUSTICE BRENNAN, with whom MR. JUSTICE FORTAS joins, concurring.

While I concur in the Court's judgment, I vote to affirm solely on the reasoning on which the Court ulti-

mately relies, namely that petitioner's apartment was not an area protected by the Fourth Amendment as related to the transactions in the present case.

The Fourth Amendment protects against governmental intrusion upon "the sanctity of a man's home and the privacies of life." *Boyd* v. *United States*, 116 U. S. 616, 630. However, the occupant can break the seal of sanctity and waive his right to privacy in the premises. Plainly he does this to the extent that he opens his home to the transaction of business and invites anyone willing to enter to come in to trade with him. When his customer turns out to be a government agent, the seller cannot, then, complain that his privacy has been invaded so long as the agent does no more than buy his wares. Thus the corner grocery with the living quarters in the rear would not be protected with respect to the area set aside for the purchase of groceries, although the living quarters to which shoppers are not privy retain the constitutional immunity. Cf. *Wong Sun* v. *United States*, 371 U. S. 471.

The petitioner in this case opened his apartment for the conduct of a business, the sale of narcotics; the agent, in the same manner as any private person, entered the premises for the very purpose contemplated by the occupant and took nothing away except what would be taken away by any willing purchaser. There was therefore no intrusion upon the "sanctity" of petitioner's home or the "privacies of life."