THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* KURT FIEDLER, Appellant.

Fourth Department, October 31, 1968.

*Lipsitz, Green, Fahringer, Roll, Schuller & James (Herald Price Fahringer* of counsel), for appellant.

*Michael F. Dillon, District Attorney (Leslie G. Foschio* of counsel), for respondent.

HENRY, J. On defendant's appeal from a judgment convicting him of illegal possession of narcotic drugs, we have before us for review an order of Erie County Court denying his motion to suppress evidence seized under the authority of a search warrant. The warrant is based on an affidavit of police officer Giambrone and a verified statement of Marsha Van Dervoort. Giambrone avers that he had information that the Fiedler residence was used for the purpose of smoking marijuana and of taking hallucinatory drugs; that a reliable informant had observed such conduct; that he had observed a number of known narcotic users entering the premises on two occasions, and that

a known major narcotic distributor had been observed entering the premises. Marsha Van Dervoort's statement recites that she had visited the Fiedler home on a number of occasions and had smoked marijuana supplied by the Fiedlers; that on April 18, 1967 she negotiated for a buy of marijuana from one Levinson at the Fiedler residence to be delivered to her there and when she returned with the money she found appellant and others smoking marijuana in a room in the Fiedler residence. This proof was sufficient to establish that probable cause existed to support the issuance of the warrant. (Code Crim. Pro., § 793; *People v. Smith,* 21 N Y 2d 698; *People* v. *Montague,* 19 N Y 2d 120; *People* v. *Rodger,* 28 A D 2d 625.)

On the suppression hearing appellant adduced evidence showing that Miss Van Dervoort carried a hidden radio device while she was in the Fiedler home which transmitted conversations occurring in her presence, and he claims that the use thereof was illegal. Although there is authority supporting the use of the transmitter under the circumstances of this case (*Osborn* v. *United States,* 385 U. S. 323; *Hoffa* v. *United States,* 385 U. S. 293; *Lopez* v. *United States,* 373 U. S. 427; *On Lee* v. *United States,* 343 U. S. 747; *United States* v. *Knohl,* 379 F. 2d 427; see, also, *Katz* v. *United States,* 389 U. S. 347, footnote p. 363; *Lewis* v. *United States,* 385 U. S. 206), that question is not before us on this record. (*People* v. *Alfinito,* 16 N Y 2d 181; *People* v. *Solimine,* 18 N Y 2d 477.) Nothing that the police heard transmitted by the electronic device was used to obtain the warrant. If appellant had stood trial and the police had attempted to corroborate Miss Van Dervoort's testimony by disclosing what they heard transmitted by the device, an objection to their testimony could properly have been based on the claimed illegal use of the transmitter. Here, however, appellant withdrew his plea of not guilty, admitted that he had marijuana in his possession and entered a plea of guilty. Here the motion was "for an order suppressing certain evidence [pipes and marijuana] obtained as a result of a search". The motion was not to suppress evidence of what the police heard transmitted by the device. On the evidence adduced at the hearing, County Court properly denied the motion.

The judgment of conviction should be affirmed.

GOLDMAN, J. (dissenting). Defendant appeals from a judgment of Erie County Court convicting him, upon a plea of guilty, of illegal possession of narcotic drugs in violation of section 3305 of the Public Health Law, and from an intermediate order denying defendant's motion to suppress certain evidence. Section 813-c of the Code of Criminal Procedure provides defend-

ant's right to appeal under the circumstances in this record "notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty".

Defendant and others were arrested after the police had secured a search warrant for premises owned by defendant's father, one Dr. Leslie Fiedler, also a codefendant. The search of the house resulted in the seizure of a quantity of marijuana. Defendant was indicted for the felony of giving a narcotic drug to a person under 21 years of age and the other five persons arrested were charged with various violations which are misdemeanors.

Defendant presents two questions as to the issues in this appeal:

" 1. Was the intermittent electronic surveillance of the Fiedler family for two months, without judicial authorization or probable cause unlawful under Section 813(a) and the Fourth Amendment to the Federal Constitution?

" 2. Was the planting of a police agent in the Fiedler home for two months without prior judicial authorization or probable cause unconstitutional under the Fourth Amendment to the Federal Constitution? "

In denying defendant's motion to suppress the County Court held that the action of the police was not violative of the Fourth Amendment of the Federal Constitution. The facts surrounding the use of the electronic eavesdropping device by an agent of the police, without any court approval, squarely present the questions involved.

More than two months before the police raided the Fiedler home the Buffalo Narcotics Squad decided to launch an investigation of Dr. Fiedler. A member of the squad went to a Buffalo hospital to talk with one Marsha Lynn Van Dervoort who was then a patient in the psychiatric ward. She was asked if she could gain entrance to the Fiedler home and replied that she knew Dr. Fiedler's daughter and through this contact could gain access. She was then asked to act as an undercover agent and was told only that the police wanted to " get certain information from the Fiedlers ". Thus, without any probable cause shown, the police arranged to place an agent in the Fiedler home for the purpose of eavesdropping upon the household. For a period of several weeks thereafter the police transported Miss Van Dervoort to the home and equipped her with an electronic eavesdropping device by means of which the police overheard and made notes of the conversations within the home.

It is conceded that no effort was made to secure judicial authorization for this invasion of the right of privacy of a

person's home. No support for this extreme action can be found in *Osborn* v. *United States* (385 U. S. 323). The permissibility of using the electronic device in that case was preceded by judicial authorization supported by affirmative and positive proof of probable cause "under the most precise and discriminate circumstances —. There could hardly be a clearer example of ' the procedure of antecedent justification before a magistrate that is central to the Fourth Amendment ' as ' a precondition of lawful electronic surveillance ' ''. (*Osborn* v. *United States*, *supra*, pp. 329, 330). In the case at bar the " bug " was not used " for the narrow and particularized purpose of ascertaining the truth of the affidavit's allegations " (p. 330), as in *Osborn*, but was an indiscriminate shotgun method of invasion of individual security, unlimited in time or specificity and with no showing whatsoever of antecedent justification. The unauthorized and unrestrained use made of the device by the police was particularly condemned in *Berger* v. *New York* (388 U. S. 41, 58) where the court order authorizing eavesdropping was declared invalid because of the absence of the " precise and discriminate " requirements " so as to prevent unauthorized invasions of ' the sanctity of a man's home and the privacies of life.' *Boyd* v. *United States*, 116 U. S. 616, 630." The Supreme Court's determination that the practice used in the case at bar was a violation of the Fourth Amendment was confirmed by its 7 to 1 decision in *Katz* v. *United States* (389 U. S. 347). It follows that if the use of the electronic device was illegal, then the " fruits " thereof could not be used to sustain the sufficiency of the search warrant (*Costello* v. *United States*, 365 U. S. 265, 280).

Although there is no proof that Marsha Van Dervoort was ever invited into the Fiedler home, her entry to the house was not an illegal entry. Although *Katz* v. *United States* (*supra*) overruled the earlier cases and eliminated the requirements of physical penetration and a " constitutionally protected " area as conditions of an unreasonable search and seizure, the fact that she wore the " bug " each time she came did result in a trespassory intrusion into a " constitutionally protected " area. Neither the Fiedlers nor their guests can be assumed to have consented to the presence of the device upon the girl's body and its use was a violation of the privilege of the nonconsenting parties to control the extent of their conversations. It is, of course, completely immaterial and irrelevant that the search of the premises resulted in the finding of alleged narcotics. Furthermore, there is no claim asserted by the People that the Fiedlers had converted their home " into a commercial center

to which outsiders are invited for purposes of transacting unlawful business ", as in *Lewis* v. *United States* (385 U. S. 206, 211). " The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding " (*Olmstead* v. *United States,* 277 U. S. 438, 479).

The microminiaturization and increasing sophistication of electronic devices have placed in the hands of law-enforcement officials, and criminals as well, a dreadful instrument for the invasion and violation of one's privacy. By reason of the genius of science the possibilities of surreptitious surveillance are almost without limit. " By its very nature eavesdropping involves an intrusion on privacy that is broad in scope. As was said in *Osborn* v. *United States,* 385 U. S. 323 (1966), the ' indiscriminate use of such devices in law enforcement raises grave constitutional questions under the Fourth and Fifth Amendments ', and imposes ' a heavier responsibility on this Court in its supervision of the fairness of procedures '." (*Berger* v. *New York,* 388 U. S. 41, 56). The courts must be ever vigilant to resist this invasion of the right of privacy and the right to be free from any and all unreasonable searches, a right guaranteed by both the Federal and State Constitutions. We must not be lulled into the pernicious doctrine that in the administration of justice, in our fight against crime, the end justifies the means. The conviction should be reversed, the motion to suppress granted and a new trial ordered.

WILLIAMS and WITMER, JJ., concur with HENRY, J.; GOLDMAN, J., dissents in opinion in which BASTOW, P. J., concurs.

Judgment affirmed.