John J. Walsh, J.
The defendant De Voy is charged with three counts of violation of the revised Penal Law relating to dangerous drugs: a sale of LSD on December 18, 1968 to G. P. Thomas (Count 1); a possession with intent to sell on the same date (Count 2); and a sale of LSD on December 16, 1968 to one Richard Hendrickson (Count 3).
Although the People have conceded that the defendant made no in-custody confession or admission which requires a Bum,tley-tjpe hearing under Miranda v. Arizona (384 U. S. 436) the defendant argues that he is entitled to a hearing and an order suppressing any statements or admissions he may have made to any police officer or agent of the police, including Hendrickson, either on December 16, 1968 or at reasonable time prior thereto.
Since De Voy was neither indicted nor arrested pursuant to the indictment until January or February of 1969, what he is asking is a suppression of any statments or admissions he may have made prior to the indictment or formal arrest.
*304 Apparently, the theory of the defendant is that there is a constitutional safeguard against self incrimination at the time the alleged crime is being committed. In a companion motion, defendant alleged that there was an entrapment in this case and asked appropriate relief by way of discovery and inspection.
Here, the defendant takes the position that the G. P. Thomas to whom the sale was made in Count 1 on December 18, 1968 was concededly an undercover police agent and that the Richard Hendrickson to whom the sale was made on December 16, 1968 was an agent of the police officer Thomas.
Specifically, the defendant asks for a suppression of any statements or admissions made by the defendant De Voy, in answers to questions propounded to him by any member of any police agency or any agents, including Richard Hendrickson, either on December 16, 1968 or at reasonable time prior thereto, and for an order suppressing any evidence or evidentiary leads obtained therefrom and for a hearing in reference thereto.
There is nothing before the court at this time to indicate that any questions were propounded or any answers given and the motion seems exploratory in nature.
If this is intended as an extension of Miranda v. Arizona, (384 U. S. 436, supra), it must be denied because in that decision the Supreme Court established only the principle that custodial interrogation required the fourfold warning of constitutional rights or the presence of counsel. “ Our decision is not intended to hamper the traditional function of police officers in investigating crime ” (p. 477).
In a series of three decisions in 1966, the Supreme Court made clear that (a) a spy or informer may be employed against a person although there is neither probable cause nor even reasonable suspicion that he has committed, is engaged in, or is about to engage in a criminal course of conduct; (b) the agent may be a close personal friend of the target, a business associate or a stranger; (c) the agent may carry on his clandestine activities without any limits of time or place. (See ‘ Judicial Control of Secret Agents ”, Yale L. J., April, 1967, pp. 994, 999.)
In the first of the three decisions, Lewis v. United States (385 U. S. 206), a Government agent telephoned the defendant and asked if he could purchase narcotics. The agent was invited to defendant’s home.
“The question for resolution here is whether the Fourth Amendment was violated when a federal narcotics agent, by misrepresenting his identity and stating his willingness to purchase narcotics, was invited into petitioner’s house where an unlawful narcotics transaction was consummated and the nar *305 cotíes were thereafter introduced at petitioner’s criminal trial over his objection.” (pp. 206-207).
In deciding that the Fourth Amendment did not include a home when it was converted into a place of business, the court said (pp. 208-209 ): “ Indeed, it has long been acknowledged by the decisions of this Court, see Grimm v. United States, 156 U. S. 604, 610 (1895) and Andrews v. United States, 162 U. S. 420, 423 (1896), that, in the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents. ’ ’
In Hoffa v. United States (385 U. S. 293) one Partin was released on bail on a pending crime and clearly as an agent of the Government and as a friend of Hoffa, was invited into Hoffa’s apartment, where he overheard incriminating conversations by Hoffa which he reported to the Government. The court decided that Hoffa was not relying upon the sanctity of his apartment but upon his misplaced confidence in Partin that Partin would not disclose what he heard.
The court said that “ law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.” (p. 310) and that the “use of secret informers is not per se unconstitutional.” (p. 311).
In the third case, Osborn v. United States (385 U. S. 323), one Vick was under agreement with the law enforcement authorities to report any illegal activities. He used a minfon instrument to record several incriminating statements. The Supreme Court noted that “no claim is made in this case that Vick’s testimony about the petitioner’s incriminating statements was inadmissible in evidence.” (p. 326).
In a recent case, People v. Gibson (23 N Y 2d 618), the Court of Appeals affirmed convictions for the sale of narcotics. There the question was raised whether the transmission to police by an informant, by means of a radio device concealed on his person, of incriminating conversations with defendants, is a violation of their constitutional rights. The court concluded on the basis of Osborn (supra) that there was no such violation and said:
“ The basic rationale of these decisions is that the real breach of privacy is the deception practiced by a party to the private conversation itself and that the problem is essentially the same whether he later tells about the conversation on the basis of a *306 good memory, or from notes made immediately after it, or uses the more sophisticated devices to which our times have become accustomed. * * * 1^ logic follows the closely similar reasoning in accepting from an informer proof of private conversations not bolstered by transmission or recording ” (Hoffa v. United States, 385 U. S. 293).
This court does not view People v. Mirenda (23 N Y 2d 439) as requiring a hearing on this application. In that case a hearing was directed after a new trial had been ordered where the “ defendant raises at trial the voluntariness of an admission made to a private person who, it is also claimed, was acting as a police agent ” (p. 449).
But it is clear, both in the Mirenda case and in People v. Hooper (22 N Y 2d 655), upon which the court relies, that both cases involved in-custody admissions.
In Mirenda, the defendant made his statements to one Grigg while they were detained in the Westchester County Jail without knowing that Grigg, who had been arrested for participation in the homicide, had testified before the Grand Jury. In the Hooper case, the admission was made by the defendant to Duorte, the victim of the larceny while they were in the police station.
None of these cases suggest that, when the police are investigating criminal activities, the suspect or the target of the investigation must be warned that he is being investigated and that if he says or does anything incriminating it can be used against him.
Motion is in all respects denied.