Danny Lee SWINK, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–577.

Court of Criminal Appeals of Oklahoma.

Sept. 7, 1976.

John J. Clifton, Kienzle, Jay, Clifton, Shallcross & Womack, Shawnee, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Annis Kernan, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Danny Lee Swink, was charged with the crime of Unlawful Delivery of a Controlled Drug, to wit: Amphetamine, in Case No. CRF–74–87 of the District Court, Lincoln County. He was convicted of that crime after a trial by jury and sentenced to serve a term of two (2) years in the State penitentiary and to pay a fine of Five Hundred ($500.00) Dollars. He appeals.

The sole contention on appeal is that the trial court erred in refusing to suppress contraband drugs obtained by an illegal search and seizure. The facts which led to that seizure are these. Bill Hensley and Mike Watkins were at the time in question police officers employed by the City of Lawton, but temporarily assigned to a special narcotics task force for the Attorney General of the State of Oklahoma. Several days before September 21, 1974, they were assigned by a superior officer to begin an undercover investigation into narcotics dealing in Prague, Oklahoma. The two men were directed to report to Police Chief Jim Barnard in Prague and to work under his direction. Officer Hensley testified that on September 21 he was working at his pre-arranged job as a filling station attendant when his partner told him that he had met a man named Johnny Gee who knew where to obtain narcotics in Prague. To foster this new acquaintance the police officers took Gee for a ride in their convertible automobile that afternoon and smoked marihuana with him. During the course of the afternoon Gee took them to a house where he introduced them to his friends, one of whom was the defendant, Danny Lee Swink. Swink rolled marihuana cigarettes for them from a baggie which he kept in his boot, and the officers stayed more than an hour talking to Swink about drugs he could get for them. When the officers left they drove Johnny Gee and a girl, who was present at the house, to their home. Later those two invited the officers to a party which was to take place that evening. Gee and the girl were in doubt about the location of the party but asked Hensley and Watkins to meet them at the house where they had spent the afternoon. The officers immediately reported this information to Chief Barnard.

Chief Barnard testified that when he learned that the undercover agents had been invited to a party to begin at 7:00 p. m. he made the determination that they should make no effort to obtain a search warrant because it was not possible for the officers to make the necessary trip to Chandler, Oklahoma, to sign an affidavit

for a warrant and still arrive at the house at the time set. Hensley and Watkins testified that they returned to the house at approximately 7:15 that evening. The same girl they had met earlier that day and a young boy greeted them at the door and escorted them to a bedroom. Swink was there, again, and the officers asked him for a hundred lot supply of "white crosses," an amphetamine. He responded that he had none, but could get them by the 5th of October. After that discussion, Swink reached into his boot and took out a bag containing white tablets. He asked the officers if they wanted some "speed" and Hensley offered to buy it from him. Refusing payment, Swink gave Hensley eight tablets, which later proved by chemical analysis to be amphetamine. At that point Hensley and Watkins identified themselves as police officers and placed all the occupants of the room under arrest.

Swink makes no contention that he was entrapped, nor that the officers conducted a search of the house. He contends solely that the deception practiced by Officers Hensley and Watkins in securing an invitation to the house without revealing that they were police officers constituted a governmental intrusion which violated the Fourth Amendment and invalidated the subsequent seizure of evidence.

■ The Fourth Amendment protects reasonable and justifiable expectations of privacy from governmental intrusion. *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746, 751. The Supreme Court has, however, in a series of cases made clear that excluded from the protection of the Fourth Amendment is the expectation that one's acquaintances are not undercover agents communicating incriminating confidences or actions to the authorities. See, *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453; *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312; *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374. The Supreme Court has long recognized that the use of deception by law enforcement officials in the detection of crime is not in itself improper. See, *Grimm v. United States,* 156 U.S. 604, 610, 15 S.Ct. 470, 472, 39 L.Ed. 550, 552; *Andrews v. United States,* 162 U.S. 420, 423, 16 S.Ct. 798, 799, 40 L.Ed. 1023, 1024.

In arguing that official deception exceeded permissible bounds in this case and violated his Fourth Amendment rights, defendant relies on *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647. In that case it was suspected that Gouled was conspiring with another to defraud the United States Government. An Army private, who was also a business acquaintance of Gouled, acting under the direction of his superiors in the Intelligence Department, pretended to make a social call on Gouled, was admitted to his office, and in his absence, without warrant, found and carried away certain documents, one of which was later introduced into evidence against Gouled.

The Court stated:

"[W]hether entrance to the home or office of a person suspected of crime be obtained by a representative of any branch or subdivision of the government of the United States by stealth, or through social acquaintance, or in the guise of a business call, and whether the owner be present or not when he enters, any search and seizure subsequently and secretly made in his absence, falls within the scope of the prohibition of the Fourth Amendment, . . ." 255 U.S. at 306, 41 S.Ct. at 264.

*Gouled* does not support the defendant's position here. That case holds only that the warrantless seizure of evidence from the house or office of the accused is as violative of the Fourth Amendment when done secretly and by stealth as it is when done openly and by coercion.

■ *Lewis v. United States,* supra, is a factually similar case. The accused invited a government undercover agent into his home for the specific purpose of selling him an illegal narcotic. In *Lewis,* the

Court, while recognizing that without question the home is accorded the full range of Fourth Amendment protections, stated, "but when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street." 385 U.S. at 211, 87 S.Ct. at 427. Defendant argues that *Lewis* is not applicable to the facts of his case because the home in question here was not "a commercial center," and he did not invite the undercover agents there specifically for the purpose of transacting the sale of narcotics. We do not, however, believe this point to be determinative of the Fourth Amendment issue. We think it more significant that, in this case as in *Lewis*, "during neither of his visits to petitioner's home did the agent see, hear, or take anything that was not contemplated, and in fact intended, by petitioner as a necessary part of his illegal business." 385 U.S. at 210, 87 S.Ct. at 427. In concluding its opinion the Court found no elaboration necessary upon the government's brief which the opinion quotes at 385 U.S. 212, 87 S.Ct. 428:

> " 'In short, this case involves the exercise of no governmental power to intrude upon protected premises; the visitor was invited and willingly admitted by the suspect. It concerns no design on the part of a government agent to observe or hear what was happening in the privacy of a home; the suspect chose the location where the transaction took place. It presents no question of the invasion of the privacy of a dwelling; the only statements repeated were those that were willingly made to the agent and the only things taken were the packets of marihuana voluntarily transferred to him. The pretense resulted in no breach of privacy; it merely encouraged the suspect to say things which he was willing and anxious to say to anyone who would be interested in purchasing marihuana.' "

Those words are equally applicable to the facts of this case. We find that the use of deception by the undercover agents to gain entrance to defendant's living quarters under the facts of this case violated no constitutional prohibition.

For the above and foregoing reasons the judgment and sentence appealed from is *AFFIRMED*.

BUSSEY and BLISS, JJ., concur.