## Commonwealth v. Payne

*Edgar B. Bayley, Jr., Assistant District Attorney,* for Commonwealth.
*Robert C. Spitzer,* for defendant.

SHUGART, *P. J.,* December 13, 1976—Fred Payne, Sr., is one of two defendants charged with bribery in official and political matters and conspiracy.[1] The case is listed for jury trial during the December term, 1976, which began December 6, 1976. On November 26, 1976, defendant filed a pretrial application to suppress a tape recording of a conversation between defendant and Charles M. Kemberling, Township Manager of Hampden Township, which was recorded without the knowledge of defendant.

The Commonwealth contends that the motion to suppress must be dismissed because it was not filed prior to the ten-day period preceding trial term as required by Pa. R. Crim. P. 323. If tardy, the application was late by very little, and because of the importance of the issue to be resolved, it will be considered on its merits.

Evidence received at a hearing on November 30, 1976, established that on August 23, 1976, Kemberling was approached by Payne in front of the Hampden Township office building with the offer of a bribe. Cash was offered in exchange for leniency in the matter of issuing certificates of occupancy for certain buildings owned by one Allen Bittner, who is charged as a co-defendant. Payne

---

1. Crimes Code, Act of December 6, 1972, P. L. 1482, section 1, 18 Pa. C. S. §§4701 and 903, respectively.

next met with Kemberling on August 31, 1976, at the office of the latter. They discussed matters pertaining to a hunting club of which both were members, and Payne requested that they meet the following day at Kemberling's home. Payne met Kemberling at the appointed location shortly after 5 p.m. on September 1, 1976. The two were in the garage when Payne produced his wallet, spread it open so Kemberling could see a number of $20 bills, and repeated his offer of a bribe.

Kemberling was in the practice of carrying a pocket-sized tape recorder for the purpose of recording conversations with people who would contact him with complaints and suggestions about management of township affairs. When he met with Payne on September 1, he had it in the left pocket of his shirt. He activated the recording device at a point in the conversation where defendant was commenting about noise from across the road. The recorder then captured the verbal portion of Payne's attempt to illegally influence the township manager. Although the devise was carried in such a manner that it could have been seen by Payne, there is no evidence that he knew his voice was being recorded.

Defendant contends that since he *did not consent* to the recording of his voice, the tape was obtained by an invasion of his privacy in violation of section 5705 of the Crimes Code [2] and must be

2. Act of December 6, 1972, P. L. 1482, sec. 1, added December 27, 1974, P. L. 1007, sec. 4, 18 Pa. C. S. §5705, which provides, in pertinent part, as follows:

"(a) Offense defined. — A person commits a misdemeanor of the second degree if he:

"(1) makes, sells, buys, makes use of, possesses, installs or employs any electronic, mechanical or other device for the purpose of eavesdropping; or

excluded from evidence pursuant to section 5703 of the Crimes Code, which provides:

"Except as proof in a suit or prosecution for a violation of this chapter [prohibiting invasions of privacy], no evidence obtained as a result of a violation of privacy or breach of privacy of messages shall be admissable as evidence in any legal proceeding."[3]

As hereinafter indicated, we conclude that defendant impliedly consented to the recording of his voice.

When one commits an act of violence against another, he is bound to anticipate some form of self-defense from the victim. Self-defense is sanctioned by the law: Crimes Code, 18 Pa. C. S. § 505. Similarly, one engaging in illicit conduct is chargeable with knowledge that a victim with a sense of civic duty may act to protect members of society who may be similarly situated by reporting the criminal activity and assisting in the prosecution of the violator. In this case, Kemberling, a public official, had more of a duty than the average citizen to protect the interests of the people of Hampden Township. If Kemberling, as the reci-

---

"(2) divulges or uses any information, knowing or having reason to know that such information was obtained by eavesdropping unless such divulgence or use is with the permission of the person or persons whose voice, voices or actions were the subject of the eavesdropping."

Section 5701 of the Crimes Code defines "eavesdropping" as follows:

"Surreptitiously listening to, monitoring, transmitting, amplifying or recording the voice of another person without the knowledge and approval of such other person by use of any electronic, mechanical or other device . . ."

3. Act of December 6, 1972, P. L. 1482, sec. 1, as reenacted, 18 Pa. C. S. §5703.

pient of an attempted bribe, is not a true "victim," he must at least be classified as one to whom an offer to become a co-conspirator has been made. See Crimes Code, 18 Pa. C. S. § 4701(a). As a matter of Federal constitutional law, one is not justified in the expectation that an apparent colleague will not later reveal his confidences to the police: Hoffa v. United States, 385 U. S. 293 (1966); Lewis v. United States, 385 U. S. 206 (1966). Unlike Federal law (see United States v. White, 401 U. S. 745 (1971); Lopez v. United States, 373 U. S. 427 (1963)), the Pennsylvania statute clearly prohibits law enforcement officers from investigating crime by use of electronic devices for hearings and recording sound, but it is inconceivable that the legislature intended to similarly restrict victims of crime acting to protect their persons or reputations. In this case, there is nothing to indicate that Kemberling made the recording at the instance or suggestion of any law enforcement agency. For this reason, and because a criminal is not justified in expecting privacy from victims and co-conspirators upon whom he chooses to thrust his illegal activities, we hold that Payne impliedly consented to the recording of his offer of a bribe by engaging in such conduct.

In this case, the criminal conduct did not involve violence. If such were the case, the doctrine of implied consent would have a more dramatic application. If a woman alone in her home were awakened by an intruder, and she activated a recording device before being assaulted and raped, would she be prohibited from using the recording at the trial of the rapist to contradict the intruder's defense of a consensual relationship? Can the statute be construed to prohibit the use of the rec-

ording and force the victim into an oath-against-oath confrontation when truth more accurate than memory is recorded on the tape? We do not believe that the legislature ever intended the property, person and reputation of its citizens to be so recklessly disregarded.

By enacting section 5704 of the Crimes Code, the legislature undoubtedly intended to create an exclusionary rule akin to that of Mapp v. Ohio, 367 U. S. 643 (1961), a rule established to protect all people from violation of their constitutional rights by Federal and State authorities. It is one thing to bind the hands of State officials so that they do not infringe on the privacy of law-abiding citizens however, to take from a private citizen the power to protect his own interests. A private citizen, innocently made a victim of crime, who must publicly expose his reputation to serious examination and possible abuse in the courtroom, has a right to defend himself. That right we believe is granted to him by article I, sec. 1, of the Constitution of Pennsylvania:

"All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of . . . acquiring, possessing and protecting property and reputation . . ."

This right, granted constitutionally, is immune to legislative invasion. The prosecuting witness of this case is subject to attacks upon his honesty just as much as the victim of a rape is subject to attack regarding her sexual conduct. Without the recorded conversation in evidence, a defendant could well contend that he, rather than the prosecuting witness, was the person who rejected the illegal offer of the other. A decision that Payne did not impliedly consent to the recording of his unlawful

overture would cast grave doubt as to the constitutionality of the exclusionary rule of section 5704 of the Crimes Code because it would deprive a prosecuting witness of the right to defend his reputation. A construction that avoids an allegation of unconstitutionality must always be favored. Statutory Construction Act of December 6, 1972, P.L. 1339, sec. 3, 1 Pa. C. S. §1922(3); Commonwealth ex rel. Finken v. Roop, 234 Pa. Superior Ct. 155, 165, 339 A.2d 764 (1975); 7 P. L. E. 224 §23.

### ORDER

And now, December 13, 1976, for the reasons set forth in an opinion filed this date, the order of December 6, 1976, refusing to suppress the record of the conversation between defendant and the principal witness of the Commonwealth is ratified and confirmed.