OPINION
Defendant, Raymond Slone, appeals from his conviction and sentence for gross sexual imposition, which was entered on a jury's verdict of guilty.
The victim of the offense of which Slone was convicted is A.B. She complained to police that Slone had "groped" her when she called at his place of business, an auto sales lot. Her purpose in going there was to sell consumer products. Police then put a "wire" on A.B. and sent her back to Slone's place of business, hoping that she would elicit incriminating statements from Slone that the officers could monitor.
The record doesn't reveal what incriminating statements, if any, Slone made. But, after he was indicted on a charge of gross sexual imposition, Slone filed a motion to suppress any evidence of statements he made to A.B. Slone claimed that the methods used to obtain them "violate the fundamental fairness guarantees of the Fourteenth Amendment and due process." He also argued that the statements "were obtained by coercion or by improper conduct or inducement and must be suppressed."
The trial court overruled Slone's motion to suppress, holding that because A.B. had consented to police monitoring of her conversations with Slone, the evidence police obtained was exempt from suppression pursuant to R.C. 2933.52(B)(3). The court also relied on State v. Williams(1996), 17 Ohio App.3d 488, to so hold.
 Slone was tried by a jury and convicted on its verdict of guilty. Hewas sentenced to serve six months in jail. Slone filed a timely notice ofappeal
 FIRST ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESSEVIDENCE."
Title III of the Federal Crime Control Act of 1968 prohibits wiretapping and makes the fruits of wiretapping inadmissible in any criminal proceeding, federal or state. However, state officials may engage in wiretapping if authorized by a state statute that meets the requirements of Title III. R.C. Chapter 2933 addresses those requirements. R.C. 2933.51 states, in pertinent part:
 "(A) `Wire communication' means an aural transfer that is made in whole or in part through the use of facilities for the transmission of communications by the aid of wires or similar methods of connecting the point of origin of the communication and the point of reception of the communication, including the use of a method of connecting the point of origin and the point of reception of the communication in a switching station, if the facilities are furnished or operated by a person engaged in providing or operating the facilities for the transmission of communications. `Wire communication' includes an electronic storage of a wire communication.
* * *
 "(C) `Intercept' means the aural or other acquisition of the contents of any wire, oral, or electronic communication through the use of an interception device."
R.C. 2933.52(A) prohibits interception of any "wire, oral, or electronic communication." Paragraph (B)(3) of that section permits a police officer to do so if one of the parties to the communication has given prior consent to the interception.
The foregoing provisions prohibit interception in Ohio of a "wire communication" by a person who is not a party to it, except a police officer who has been given permission by one of the parties to the communication to intercept it. Those provisions do not prohibit electronic interception of a form of communication that is not a "wire communication," as that is defined. That definition of a wire communication does not include a face-to-face conversation between persons. Therefore, police may intercept a face-to-face communication electronically, unless in so doing they somehow violate the Fourth Amendment prohibition against unreasonable searches and seizures.
In State v. Williams, supra, the defendant sought to suppress evidencethat was similarly obtained, but on a claim that the informant who worethe "wire" had been coerced by police to cooperate. The First Districtfound that threats to prosecute the informant if she didn't cooperate mayhave "backed (her) into a legal corner," Id., at 496, but that thosethreats didn't amount to coercion to obtain the consent that R.C.2933.52(B) contemplates and requires.
Defendant Slone didn't claim that police coerced A.B. to wear a wire. Indeed, his claim was not founded on the prohibitions of R.C. 2933.52 at all. Rather, the grounds on which his motion to suppress relied were an alleged violation of his Fourth Amendment rights.
Slone argues, as he did in the trial court, that because A.B. was an agent of the police who gained entry to his business by subterfuge in order to elicit incriminating statements from him that officers could electronically monitor and record from a "wire" she wore, Slone's Fourth Amendment rights were violated. We do not agree.
"In these circumstances, `no interest, legitimately protected by the Fourth Amendment is involved,' for that amendment affords no protection to `a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.' Hoffa v. United States at302, 17 L.Ed.2d at 382. No warrant to `search and seize' is required insuch circumstances, nor is it when the Government sends to defendant'shome a secret agent who conceals his identity and makes a purchase ofnarcotics from the accused, Lewis v. United States, 385 U.S. 206,17 L.Ed.2d 312, 87 S.Ct. 424 (1966), or when the same agent, unbeknown tothe defendant, carries electronic equipment to record the defendant'swords and the evidence so gathered is later offered in evidence. Lopezv. United States, 373 U.S. 427, 10 L.Ed.2d 462, 83 S.Ct. 1381 (1963)."United States v. White (1971), 401 U.S. 745, 749, 91 S.Ct. 1122,28 L.Ed.2d 453, 457.
The same applies when the government agent is in the suspect's place of business with his consent, so long as the agent does not violate the privacy of the office by seizing something surreptitiously without the suspect's knowledge. Lopez v. United States (1963), 373 U.S. 427,83 S.Ct. 1381, 10 L.Ed.2d 462. Slone doesn't claim that he didn't consent toA.B.'s entry onto his premises, or that she violated his related privacyinterests. Rather, Slone claims that A.B. entered with a false purpose.Of such claims based on facts similar to those before us, Justice Jacksonwrote:
 "It would be a dubious service to the genuine liberties protected by the Fourth Amendment to make them bedfellows with spurious liberties improvised by farfetched analogies which would liken eavesdropping on a conversation, with the connivance of one of the parties, to an unreasonable search or seizure. We find no violation of the Fourth Amendment here." On Lee v. United States (1952), 343 U.S. 747, 754, 72 S.Ct. 967, 96 L.Ed.2d 1270, 1276.
 Though the trial court misconstrued the gist of Slone's motion tosuppress when it resolved his claim on the basis of R.C. 2933.52(B), theforegoing authorities amply demonstrate that Slone's Fourth Amendmentclaim has no basis in law. No further evidentiary inquiry beyond theinquiry the trial court made is required to reach that conclusion. Inthat instance, we may affirm the trial court's judgment when the court'sresolution of the issue before it is legally correct, though on differentgrounds. State v. Peagler (1996), 76 Ohio St.3d 496. We do so here.
 The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO SIX MONTHS INPRISON."
 Slone was convicted of gross sexual imposition by force, R.C.2907.05(A)(1), a felony of the fourth degree.
 Pursuant to R.C. 2929.14(A)(4), the trial court sentenced Slone toserve a term of six months incarceration. The court rejected thecommunity control alternative on findings that Slone was likely to commitfuture crimes because he showed no genuine remorse. R.C. 2929.12(D)(5).The court also found that Slone was on pretrial release when he committedthe offense, but it appears that the court may have withdrawn thatfinding after the Defendant disputed it.
 We need not consider the court's other finding if its "no genuineremorse" finding is supportable. Slone challenges the finding, arguingthat he should not be penalized for his continued protestations ofinnocence, which he has the right to voice.
 We agree that Slone has a right to continue to protest his innocence.However, when a defendant's guilt has been judicially determined by hisconviction, those protestations are not entitled to any exemption fromthe negative consequences that can attach to them because of theconviction. Among those negative consequences may be the trial court'sfinding that the Defendant's continued protestations demonstrate nogenuine remorse for purposes of R.C. 2929.12(D)(5). That may appearharsh, but a convicted defendant isn't required to say anything at all.If he then does, it is his own choice to assume the risk of adverseconsequences which his statement involves.
 The second assignment of error is overruled.
 Conclusion Having overruled the assignments of error presented, we will affirmSlone's conviction and sentence.
FAIN, J. and YOUNG, J., concur.