[Cite as *State v. Mangan*, **2014-Ohio-960**.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2013-CA-3 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 12-CR-143 |
| v. | : | |
| | : | (Criminal Appeal from |
| NOEL E. MANGAN | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of March, 2014.

. . . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, by STEPHANIE R. HAYDEN, Reg. #0082881, Greene County Prosecutor's Office, 55 Greene Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. #0072135, 36 North Detroit Street, Suite 102 Xenia, Ohio 45385
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}  Defendant-appellant Noel E. Mangan appeals from his conviction and sentence for one count of Illegal Manufacture of Drugs, in violation of R.C. 2929.04(A), a felony of the second degree; two counts of Illegal Assembly or Possession of Chemicals for the Manufacture

of Drugs, in violation of 2925.041, felonies of the third degree; three counts of Aggravated Trafficking in Drugs, in violation of R.C. 2925.03(A)(1), felonies of the fourth degree; and one count of Possession of Criminal Tools, in violation of R.C. 2923.24(A), a felony of the fifth degree. Mangan contends that the trial court erred by admitting in evidence audiovisual recordings made by a surreptitious miniature recording device on a car key fob that was uploaded from the recording device onto a computer hard drive maintained by the police department. Mangan argues that the duplicates of the original recordings were not admissible under Evid.R. 1003, because a genuine question was raised as to the authenticity of the originals, since the times and dates impressed onto the recordings by the recording device were not correct.

{¶ 2}    We conclude that except for the time and date impressions, which the State acknowledged were not correct, there was unrebutted testimony of the undercover police officer present when the recordings were made that they accurately depicted the events shown and heard on the recordings. The recordings were not offered to prove the dates and times of the events depicted thereupon.

{¶ 3}    Mangan also contends that the trial court erred by overruling his motion to suppress evidence obtained as the result of consensual entry into his residence of an undercover police officer for the ostensible purpose of purchasing illegal drugs. We disagree, on the authority of *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966); and *State v. Posey*, 40 Ohio St.3d 420, 534 N.E.2d 61 (1988). Accordingly, the judgment of the trial court is Affirmed.

## I.   An Undercover Police Officer Buys Methamphetamine

**from Mangan at his Residence on Two Occasions**

{¶ 4}    On February 12, 2012, Naomi Penrod, a Yellow Springs Police Detective, entered Mangan's residence with a confidential informant for the purpose of purchasing methamphetamine.   Penrod had on her person a surreptitious miniature recording device in the form of a car key fob.   After purchasing the methamphetamine, Penrod was able to observe Mangan manufacturing methamphetamine in a pole barn on his property.

{¶ 5}    Penrod subsequently turned the recording device over to Sugarcreek Township Police Detective Craig Black, who was also a member of the Greene County A. C. E. Task Force.  The recording device had a limited storage capacity, so Black uploaded the file to a secure file maintained on a computer at the Task Force, deleting the recording stored on the recording device in order that it could be reused.

{¶ 6}    On March 26, 2012, Penrod and the informant again went to Mangan's residence, and again purchased methamphetamine.   This transaction was also captured on a surreptitious audiovisual recording device, which was later turned over to Black, who again uploaded the recording to a secure file on a Task Force computer.


## II.   The Course of Proceedings

{¶ 7}    Mangan was later charged by indictment with two counts of Illegal Manufacture of Drugs, two counts of Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, three counts of Aggravated Trafficking in Drugs, and one count of Possession of Criminal Tools.   The case was tried to a jury.   At the conclusion of the State's case, the trial court granted Mangan's Crim.R. 29 motion for a judgment of acquittal on one of the Illegal Manufacture of Drugs counts.   Mangan presented no evidence.   Mangan was found guilty of all the remaining

counts.

{¶ 8}    The trial court merged one of the Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs convictions with the Illegal Manufacture of Drugs conviction, those offenses having been found to be allied offenses of similar import, and the State having elected to have Mangan sentenced on the Illegal Manufacture conviction.  The trial court also merged the Possession of Criminal Tools conviction with the remaining Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs conviction, those offenses having been found to be allied offenses of similar import, and the State having elected to have Mangan sentenced on the Illegal Assembly or Possession conviction.

{¶ 9}    The trial court sentenced Mangan to five years in prison on the Illegal Manufacture of Drugs conviction, to eighteen months in prison for each of the three Aggravated Trafficking convictions, and to thirty-six months in prison for the Illegal Assembly or Possession conviction, and ordered all sentences to be served concurrently, for a total sentence of five years in prison.  The trial court also suspended Mangan's driver's license for five years and ordered him to pay court costs, but did not impose a fine.

{¶ 10}   From his conviction and sentence, Mangan appeals.


**III.   No Genuine Question Was Raised as to the Authenticity of the**

**Originals of the Audiovisual Recordings of the Offenses**

**(Except for the Date and Time Impressions, for which Purpose**

**the Exhibits Were Not Offered), Therefore the Trial Court Did Not Err**

**in Admitting the Duplicate Recordings in Possession of the Police**

{¶ 11}   Mangan's First Assignment of Error is as follows:

THE TRIAL COURT ERRED IN THE ADMISSION OF EVIDENCE AT

TRIAL.

{¶ 12}   In this assignment, Mangan takes exception to the admission of the audiovisual recordings of the offenses in the possession of the police.  Mangan argues that the recordings, having been copied onto the computer hard drive from the original recording device, are duplicates, and are therefore covered by Evid.R. 1003: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Mangan argues that he did raise a genuine question as to the authenticity of the original recording, because Officer Black testified that the times and dates "stamped" on the recordings by the audiovisual recording device were not correct.

{¶ 13}   Officer Penrod, who was present when both recordings were made, testified that they accurately depicted the events shown and heard on each recording.  Her testimony in this regard was not rebutted.   Therefore, the only question raised as to the authenticity of the original recordings is the time and date "stamped" on the recordings.  The State acknowledged that the times and dates shown on the recordings were not correct, but offered other evidence to show the times and dates when the events depicted in each recording occurred.   Therefore, the recordings were not offered to prove the times and dates of the occurrences depicted therein, and no genuine question was raised as to the authenticity of each original recording for the purposes for which each was offered.

{¶ 14}   We might reach a different result if an immaterial discrepancy in a duplicate was

of a nature that reasonably implicated the authenticity of the original in general. But it is common knowledge that time and date stamps on recording devices, unless the devices are connected to the internet, must be correctly set up by a user initially, and must be maintained, so that inaccuracies in a time and date stamp on an audiovisual recording device often occur without impugning in any way the accuracy of the audiovisual recordings underlying the time and date stamps.

{¶ 15}    We conclude, therefore, that the trial court did not err in admitting the audiovisual recordings in evidence.   Mangan's First Assignment of Error is overruled.


**IV.   The Fact that a Person Given Consent to Enter a Residence Is an Undercover Police Officer Does Not Vitiate the Consent for Fourth Amendment Purposes**

{¶ 16}    Mangan's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS.

{¶ 17}    In this assignment of error, Mangan argues that Officer Penrod's entries into his residence were unlawful because they were without his consent, since he did not know Penrod was a police officer, and they were without a warrant.   Therefore, the evidence obtained from those entries should have been suppressed.

{¶ 18}    In *State v. Posey*, 40 Ohio St.3d 420, 534 N.E.2d 61 (1988), paragraph three of the syllabus, the Supreme Court of Ohio held: "When an individual gives consent to another to enter a private area wherein illegal activities are being conducted, the consent does not lose its status of being freely and voluntarily given merely because it would not have been given but for

the fact that the other person failed to identify himself as a police officer or agent."

{¶ 19}  At 428, the Supreme Court of Ohio cited *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966).  In *Lewis*, at 211, the United States Supreme Court held that an undercover narcotics agent could lawfully enter a home for the purpose of purchasing illegal drugs without violating the Fourth Amendment, just as in the case before us.  On the authority of *Posey* and *Lewis*, Mangan's Second Assignment of Error is overruled.

## V.   Conclusion

{¶ 20}  Both of Mangan's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

FROELICH and WRIGHT, JJ., concur.


(Hon. Thomas R. Wright, Eleventh District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).


Copies mailed to:

Stephen K. Haller
Stephanie R. Hayden
Jay A. Adams
Hon. Stephen Wolaver