ANNETTE KINGSLAND ZIEGLER, J.
(concurring').
f 86. I join the court's opinion with a few exceptions and a few caveats. Because I am able to join most, but not all, of the court's opinion, I write to provide further clarity of that opinion.
f 87. At the outset, I am compelled to clarify what was and was not the "misrepresentation" in this case. Here, the term "misrepresentation" is being used in the context of law enforcement reading a required form completely accurately but the standard form that was read verbatim inaccurately stated the law. This court has framed that misstatement of law by using the phrase "misrepresentation." To be clear, there are a number of occasions where law enforcement may appropriately use "misrepresentations" in the context of an investigation or otherwise. See, e.g., Lewis v. United States, 385 U.S. 206, 208-09 (1966) ("Indeed, it has long been acknowledged by the decisions of this Court that, in the detection of many types of crime, the Government is entitled to use decoys and to conceal the *371 identity of its agents." (citations omitted)); United States v. Peters, 153 F.3d 445, 464 (7th Cir. 1998) (Easterbrook, J., concurring) ("Police engage in deceit all the time in order to induce suspects to reveal evidence. . . . Deception plays an important and legitimate role in law enforcement.").
¶ 88. In the case at issue, the word "misrepresentation" is used not because law enforcement spoke in an effort to induce coercion, but rather, is used in the literal sense that the language on the form read misrepresented what the law actually was. Thus, it is not law enforcement action that caused the misrepresentation, but rather the inaccuracy of the form, properly read verbatim, that inaccurately informed the defendant of the state of the law. The phrase "misrepresentation" is used in the opinion but the use of that term should not be confused with a more typical scenario involving misrepresentations made by law enforcement.[1] The opinion should not be read to suggest that any misrepresentation by law enforcement would automatically render a subsequent action to be deemed coerced. One does not automatically influence the other.
¶ 89. Second, I further write to clarify that the court's opinion should not be read as inconsistent with my view of the constitutional theory behind Wisconsin's implied consent law. See, e.g., State v. Howes, 2017 WI 18, ¶¶ 52-87, 373 Wis. 2d 468, 893 N.W.2d *372 812 (Gableman, J., concurring). The court sensibly does not opine on this matter in this case and I write to alert the reader that this decision should not be interpreted as doing so.
¶ 90. Third, I do not join that part of the opinion which discusses the inferences that Blackman might have drawn from one of Deputy Abler's statements in this case. See majority op., f 65. Specifically, Deputy Abler's reference to department policy to draw blood and what Blackman might have thought that to mean is a disputed fact between the parties. Resolution of the meaning of the statement is not necessary to the disposition of this case. If we were to review this, the inquiry would not be as subjective as the court's discussion might seem. Cf., e.g., Florida v. Jimeno, 500 U.S. 248, 251 (1991) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?").
¶ 91. Fourth, the good faith exception applies in specific, narrowly-defined circumstances. See, e.g., State v. Dearborn, 2010 WI 84, ¶ 46, 327 Wis. 2d 252, 786 N.W.2d 97 ("[Ujnder our holding today, the exclusionary rule is inappropriate only when the officer reasonably relies on clear and settled precedent. Our holding does not affect the vast majority of cases where neither this court nor the United States Supreme Court have spoken with specificity in a particular fact situation."); Davis v. United States, 564 U.S. 229, 238-39 (2011) (listing cases). In my view, the facts of this case do not constitute one of the rare occasions where the good faith exception applies. This is not a case, for example, where law enforcement followed the law in existence at the time, where the error will not *373 occur in the future given the current state of the law, and where future action is already deterred because of the correction in the law. Instead, the law enforcement officer inaccurately explained existing law, and this error might continue to occur in the future such that the deterrent effect will be served by the suppression of evidence. While deterrent effect is not the sole consideration, I am able to join the court's discussion understanding that although "[r]eal deterrent value is a 'necessary condition for exclusion,'... it is not 'a sufficient' one. The analysis must also account for the 'substantial social costs' generated by the rule." Id. at 237 (citation omitted) (quoting Hudson v. Michigan, 547 U.S. 586, 596 (2006)). The result reached in this case is not inconsistent with this approach.
¶ 92. Fifth, while I agree with the court that the information given to Blackman in the instant case was inaccurate under the law, I do not necessarily join the court's inference that certain advice should be given to Blackman under Wis. Stat. § 343.305(3)(ar)2. We need not go that far.
1 93. For the foregoing reasons, I respectfully concur.
¶ 94. I am authorized to state that Justice MICHAEL J. GABLEMAN joins this opinion.

 When it comes to misrepresentations by law enforcement, the proposition that misrepresentation is or is not deemed to be permissible oversimplifies the reality of when or if a misrepresentation by law enforcement has been approved by the courts. See, e.g., Lewis v. United States, 385 U.S. 206, 208-09 (1966); United States v. Peters, 153 F.3d 445, 464 (7th Cir. 1998) (Easterbrook, J., concurring).