248 So.2d 439 (1971)
Neal EVERETT
v.
STATE of Mississippi.
No. 45550.
Supreme Court of Mississippi.
May 24, 1971.
Rehearing Denied June 18, 1971.
*440 Freeland & Gafford, Oxford, Ralph O. White, Batesville, for appellant.
A.F. Summer, Atty. Gen. by Guy N. Rogers, Asst. Atty. Gen., and Wade H. Creekmore, Jr., and James H. Creekmore, Sp. Asst. Attys. Gen., Jackson, for appellee.
PATTERSON, Justice:
This is an appeal by Neal Everett from a conviction of attempting to obtain money by false pretense. He was sentenced to serve two years in the state penitentiary by the Circuit Court of Coahoma County for this crime.
The record discloses that Everett approached one Henry Cobb, a resident of Coahoma County, who at the time faced burglary charges in nearby Panola County, and offered to obtain a dismissal of these charges against him for the sum of $5,000. This money was to pay the Sheriff of Panola County who, according to Everett, had previously agreed to obtain a dismissal of the grand jury charges or an acquittal by a petit jury.
Following this approach, Cobb contacted his attorney who notified the authorities of Everett's proposition. During the next several days, in coordination with special investigators of the State Highway Patrol, Cobb engaged Everett in several conversations relating to the dismissal of the burglary charges. These conversations were taped by recording devices attached to Cobb's telephone and by using a radio device concealed in Cobb's clothing during the conversation immediately prior to Everett's arrest.
The first telephone communication was initiated by Cobb to Everett. It acknowledged the latter's proposition of the preceding day and culminated in an agreement to meet the following day to discuss the matter. In response to the call Everett came to Clarksdale and he and Cobb discussed, but reached no conclusion on the payment to compensate the sheriff. The recording of this discussion was inaudible due to the noise created by a passing freight train. However, Cobb again contacted Everett by telephone and arranged a meeting the following day at his home in Coahoma County.
In accord with the plan of the officers and Cobb and in furtherance of the proposition of the appellant, the officers concealed themselves about Cobb's home on the night of July 30, 1968, near the area where the transaction was to be concluded by Cobb paying to Everett the sum requested. Other investigators were hidden in a nearby field, but within the transmitting area of a radio device hidden upon Cobb's person by which they would be enabled to hear the ensuing conversation between the defendant and Cobb. They would thus be informed, if the plan went well, when the money had been transferred to the defendant, at which time they would make the arrest. As anticipated, the appellant came to the vicinity of Cobb's home *441 and engaged in a conversation with him which was monitored and recorded, and after the money was transferred, the arrest was made.
Cobb testified for the State during the trial. He related the offer of Everett to obtain his acquittal for $5,000. This sum was to be used, as suggested by Everett, in payment of the services of the Sheriff of Panola County in arranging the dismissal of the indictment or to obtain a "hung jury" in the event the case was tried. The tapes of the conversations between this witness and Everett were then introduced into evidence after their identity, accuracy and preservation, without "cutting" or "splicing," had been positively established. The conversations were then reproduced for the jury by "playing" the tapes in its presence. The recordings fully corroborate the evidence related by Cobb of Everett's proposal.
The Sheriff of Panola County testified for the State. He was unequivocal in denial of any conversation with Everett which in any way related to Cobb. Several witnesses testified to the good reputation of the defendant. Everett testified in his own behalf and maintained that the conversations between him and Cobb were directed to the purchase of a trailer rather than to the acquittal of Cobb. From this evidence the jury returned a verdict of guilty, precipitating this appeal.
The first point raised is that the indictment was insufficient as a matter of law since it set forth the requisites for the completed crime of obtaining money by false pretenses rather than charging an attempt to obtain money by false pretenses. The indictment reduced to its pertinent parts is as follows:
* * * did * * * fraudulently attempt to obtain $3,000.00 * * * from Henry Cobb., Jr. on false pretense that he * * * had arranged for Forrest Tuttle * * * to obtain * * * discharge of burglary * * * charges * * * against Henry Cobb, Jr. * * * upon * * * Henry Cobb, Jr. paying money to * * * Neal Everett * * * the sum of $3,000.00 in that he * * * did come to the home of Henry Cobb, Jr. * * * did represent to Henry Cobb, Jr. that the Sheriff * * * had sent him to the said Henry Cobb, Jr. to inform him that if he would pay the said Neal Everett $3,000.00 at that time and $2,000.00 after he had been acquitted of said charge * * * he, the said Sheriff * * * would attempt to get the charge dropped * * * and that he * * * Neal Everett, did further take * * * money belonging to * * * Henry Cobb, Jr. * * * in the amount of $300.00 which the said Neal Everett thought to be $3,000.00; all of said acts being done * * * with the * * * unlawful, etc.
We are of the opinion this assignment of error is without merit since the indictment portrays quite clearly that one of the essentials to the completed crime of obtaining money by false pretense is not included, namely, the charge that the intended victim relied upon and was deceived by the false assertion. In Neece v. State, 210 So.2d 657, 660 (Miss. 1968), this Court set forth the requirements for an indictment charging the crime of false pretense. We there stated:
We have carefully considered the indictment and we find that it charges that the pretenses were false, that the appellant knew them to be false, that he obtained money thereby and that the pretense was the moving cause by which the money was obtained. * * *
The indictment here charges that the pretenses were false, that the appellant knew these pretenses to be false, and that he obtained money thereby. It does not state that the false pretense was the moving or prime cause by which the money was obtained. This essential element being omitted, the completed crime was not charged. See De Krasner v. State, 54 Ga. *442 App. 41, 187 S.E. 402 (1936), which held that the reliance of the victim on a charge of false representation is not an essential element of an attempt and that it is unnecessary that the indictment contain such an allegation. The terms of the present indictment are in accord with this reasoning and, we think, correctly charge the appellant with an attempt to obtain money by false pretenses.
The next contention is that the court erred in admitting into evidence the taped recordings of the conversations between Everett and Cobb. United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (U.S. Apr. 5, 1971), forecloses this issue against Everett. The question of the admissibility of statements obtained by eavesdropping in the form of wiretapping or electronic "bugging" has caused considerable uncertainty in the opinions emanating from the highest court of our country. This has been caused primarily, we think, by the intangible and fleeting nature of the "thing" sought to be obtained and used as evidence. The question of whether a conversation is tangible and subject to United States Constitution Fourth Amendment search limitations applicable to the several states through the Fourteenth Amendment by Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), was resolved in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). White, supra, commented upon Katz as follows:
Until Katz v. United States, neither wiretapping nor electronic eavesdropping violated a defendant's Fourth Amendment rights "unless there has been an official search and seizure of his person, or such a seizure of his papers or his tangible material effects, or an actual physical invasion of his house `or curtilage' for the purpose of making a seizure." Olmstead v. United States, 277 U.S. 438, 466, 48 S.Ct. 564, 568, 72 L.Ed. 944 (1928); Goldman v. United States, 316 U.S. 129, 135-136, 62 S.Ct. 993, 996, 997, 86 L.Ed. 1322 (1942). But where "eavesdropping was accomplished by means of an unauthorized physical penetration into the premises occupied" by the defendant, although falling short of a "technical trespass under the local property law," the Fourth Amendment was violated and any evidence of what was seen and heard, as well as tangible objects seized, were considered inadmissible fruits of an unlawful invasion. Silverman v. United States, 365 U.S. 505, 509, 511, 81 S.Ct. 679, 681, 5 L.Ed.2d 734 (1961); see also Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Berger v. New York, 388 U.S. 41, 52, 87 S.Ct. 1873, 1880, 18 L.Ed.2d 1040 (1967); Alderman v. United States, 394 U.S. 165, 177-178, 89 S.Ct. 961, 968-969, 22 L.Ed.2d 176 (1969).
Katz v. United States, however, finally swept away doctrines that electronic eavesdropping is permissible under the Fourth Amendment unless physical invasion of a constitutionally protected area produced the challenged evidence. In that case government agents, without petitioner's consent or knowledge, attached a listening device to the outside of a public telephone booth and recorded the defendant's end of his telephone conversations. In declaring the recordings inadmissible in evidence in the absence of a warrant authorizing the surveillance, the Court overruled Olmstead and Goldman and held that the absence of physical intrusion into the telephone booth did not justify using electronic devices in listening to and recording Katz's words, thereby violating the privacy on which he justifiably relied while using the telephone in those circumstances. (91 S.Ct. 1122, 1124).
The Court was careful to limit this pronouncement to the recordings of conversations between nonconsenting parties, stating:
* * * Katz involved no revelation to the Government by a party to conversations with the defendant nor did the *443 Court indicate in any way that a defendant has a justifiable and constitutionally protected expectation that a person with whom he is conversing will not then or later reveal the conversation to the police. (91 S.Ct. at 1124).
This distinguishes Katz from the present situation since Cobb consented to the recordation of the conversations. The Fourth Amendment, protection of privacy rather than property rationale, is restricted to private conversations of nonconsenting parties. Electronic surveillance, "bugging," does not tread upon constitutional rights of the Fourth Amendment when the consent of one of the parties is first obtained. The expectation of privacy, though perhaps shaken by the mistaken belief that a person to whom one voluntarily confides will not reveal the conversation, does not reach constitutional proportions. Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). The principles of White, supra, which are applicable here, are as follows:
Our problem is not what the privacy expectations of particular defendants in particular situations may be or the extent to which they may in fact have relied on the discretion of their companions. * * * Our problem, in terms of the principles announced in Katz, is what expectations of privacy are constitutionally "justifiable"  what expectations the Fourth Amendment will protect in the absence of a warrant. So far, the law permits the frustration of actual expectations of privacy by permitting authorities to use the testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants in the manner exemplified by Hoffa and Lewis. If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case. See Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).
Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize. But if he has no doubts, or allays them, or risks what doubt he has, the risk is his. * * * Given the possibility or probability that one of his colleagues is cooperating with the police, it is only speculation to assert that the defendant's utterances would be substantially different or his sense of security any less if he also thought it possible that the suspected colleague is wired for sound. At least there is no persuasive evidence that the difference in this respect between the electronically equipped and the unequipped agent is substantial enough to require discrete constitutional recognition, particularly under the Fourth Amendment which is ruled by fluid concepts of "reasonableness."
Nor should we be too ready to erect constitutional barriers to relevant and probative evidence which is also accurate and reliable. * * * Considerations like these obviously do not favor the defendant, but we are not prepared to hold that a defendant who has no constitutional right to exclude the informer's unaided testimony nevertheless has a Fourth Amendment privilege against a more accurate version of the events in question. (91 S.Ct. at 1126).
The authority of White dictates the conclusion that the introduction of the taped conversations, obtained by the prior consent of Cobb, violated no constitutional right of Everett and being authenticated as accurate by the testimony of others, was properly in evidence.
There is ample evidence in the record to support the verdict of guilty and no errors *444 of law appearing therein, the verdict and sentence of the lower court are affirmed.
Affirmed.
All Justices concur.