SMITH, Justice:
Appellant, Louise Page Ladner, was indicted on May 3, 1972 for distribution of amphetamines, a controlled substance. A capias issued pursuant to the indictment was served on May 4, 1972. On that date, appellant was arraigned and pled not guilty. The case was then set for trial on May 16, 1972, and on that date appellant was tried and convicted of the offense charged in the Circuit Court of Forrest County. She has appealed.
The events leading to appellant’s arrest and conviction may be summarized as follows. After being informed that appellant was “pushing drugs,” an undercover agent of the Bureau of Narcotics of the Hatties-burg Police Department arranged to meet her at a nightclub called the “Stone Toad.” There she agreed to sell him a quantity of amphetamines, requiring payment of an advance of $50 and directing the agent to reserve a motel room where she could deliver the drugs and conclude the transaction. The agent reserved the room, cutting a hole in the curtain so two other officers, unknown to appellant, might observe what occurred. It was also arranged that these latter officers would listen in on any conversation which might take place in the room between the undercover, agent and the appellant by means of an electronic device. The motel room was taken in the agent’s name and paid for with public funds supplied for that purpose. About two days after the first meeting, by prearrangement, appellant again met the agent again at the Stone Toad. From thence they proceeded together to the motel room. There the agent paid appellant $450 in “recorded” money for 900 amphetamine pills. This transaction with the undercover agent was, unknown to appellant, also observed and listened to by the other officers.
Upon delivery of the drugs and payment of the money, the two officers who had been stationed outside observing through the hole in the curtain, entered the room and arrested appellant.
Appellant objected to the introduction of the testimony of these two officers on the ground that they had entered the room and had arrested her without a warrant. It is argued that, since she had directed the agent to reserve the room, it was “her room,” and therefore its entry by the officers without a warrant constituted a trespass and a violation of privacy and therefore was illegal.
The United States Supreme Court has dealt with analogous situations in several cases. In Everett v. State, 248 So.2d 439, 443 (Miss.1971), this Court, quoting from United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), said:
Our problem, in terms of the principles announced in Katz, [Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576] is what expectations of privacy are constitutionally “justifiable” —what expectations the Fourth Amendment will protect in the absence of a warrant. So far, the law permits the frustration of actual expectations of privacy by permitting authorities to use the testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants in the manner exemplified by Hoffa [Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374] and Lewis [Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312], If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State’s case. See Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).
Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very *688 probably end or never materialize. But if he has no doubts, or allays them, or risks what doubt he has, the risk is his. . Given the possibility or probability that one of his colleagues is cooperating with the police, it is only speculation to assert that the defendant’s utterances would be substantially different or his sense of security any less if he also thought it possible that the suspected colleague is wired for sound. At least there is no persuasive evidence that the difference in this respect between the electronically equipped and the unequipped agent is substantial enough to require discrete constitutional recognition, particularly under the Fourth Amendment which is ruled by fluid concepts of “reasonableness.”
It follows, therefore, that appellant’s contention in this regard is without merit.
One other ground assigned and argued for reversal requires comment.
When the case was called for trial on May 16, the day set, a jury was duly em-panelled and accepted and the trial proceeded as scheduled. After all of the evidence for the prosecution was in and the State had rested its case finally, appellant’s counsel presented to the court an unsworn motion requesting the court to order a “mental examination” of the appellant at Mississippi State Hospital (for the insane) at Whitfield, since (it was said) “her condition is such that her attorney herein cannot communicate with her; that she does not understand the trial or its legal significance.”
The jury was excused and the court heard witnesses offered by appellant in support of the motion. These consisted of her brother and her uncle. Neither the appellant nor her attorney testified as to the alleged “inability to communicate.” The brother and uncle, both laymen, gave opinions, without stating any specific or significant facts as a basis therefor. The brother had not seen her for “a couple of months.” The principal “fact” in his testimony was that he had attempted to talk to appellant on the telephone and she would not talk to him about the case and he “hung up.” He did not know if this had been because she was on drugs. It was his “firm belief” that she should be “submitted for a mental examination . . . whether it be for mentality or narcotics.”
The uncle stated that appellant “appeared” to be irrational when he had attempted to talk to her and he thought also that “she should be submitted for a mental examination.” No further evidence was offered on this point and the court took the matter under advisement, for later determination. There was no objection to this action of the court. The defense rested without putting on evidence, jury instructions requested by both sides were given, the case was submitted and a verdict of guilty was returned. Following announcement of the verdict, appellant’s counsel stated to the court that he wished to “renew my motion prior to any sentence based on the verdict.” (Emphasis added.) Thereupon, the court did not impose sentence and directed that appellant be sent to the Mississippi State Hospital (for the insane) at Whitfield for the requested mental examination, stating that “If we get a report back from Whitfield that you (appellant) are mentally all right, I will then sentence you based on this verdict.” (Emphasis added.)
There was no objection to this procedure on the part of appellant, and on May 16, the same day, an order was entered continuing the case until the July term of the court and appellant was sent to Whitfield for the examination requested on her behalf. No motion for a new trial was made or filed at the May term. On June 16, 1972, a written report of the examination of appellant by the Staff at Whitfield was sent to the trial court. In this report it was stated that appellant was “without psy *689 chosis” and that “she was mentally competent.”
At the July term, for the first time, a motion was made for a new trial, one of the grounds of which was: “That the lower court erred in not sustaining the motion of the Defendant for examination as to her mental capacity to stand trial before the trial.” No evidence was offered to support this allegation and the motion was overruled in due course. The appellant was then called before the court for sentence “in her own proper person and by her counsel” and was asked if she had anything to say why sentence should not be imposed upon her and she had “naught to say,” and no objection was interposed by counsel.
Where a case is set for trial on a day certain, as this one was, and the parties, represented by counsel, appear with all their witnesses, announce ready for trial, empanel and accept a jury, and proceed without objection throughout the entire case for the prosecution, and a motion for a mental examination is then made’ for the first time, especially where it is un-sworn and supported by no more than the lay opinions of the defendant’s brother and uncle, unsupported by specific facts, that they thought she was irrational and thought that she should be “submitted for a mental examination,” the trial court must be allowed to exercise a certain degree of judicial discretion in the handling and disposition of the motion.
Here, the trial date had been set almost two weeks before, witnesses had been brought together, one indispensable witness having come from as far away as Houston, Texas, a substantial amount of the available time of the court term had been consumed, together with that of the trial judge, the attorneys, jurors, and witnesses. Leaving aside entirely all consideration of the expense and inconvenience to which all of these people had been put, as well as the public expense involved, it was the duty of the court to consider the disruptive effect of the dismissal of the jury at this juncture in the trial upon the orderly and efficient dispatch of the court’s business. It will have been observed that the course adopted by the court in the disposition of this matter was not obj ected to at the time, and no evidence was offered on the motion for a new trial to show that appellant had been, in fact, mentally incompetent to stand trial. The report of the mental examination, which had been granted the appellant at her own request, was unequivocally to the contrary and there was no attempt to impeach it. We are forced to conclude that, under all of the circumstances, the court handled the matter correctly, and did not abuse sound judicial discretion. Moreover, it must be assumed from the language of the court in directing the examination prior to imposing sentence and in continuing the case to a subsequent term of the court for the purpose of the requested examination, that, if the report had been that the appellant was, in fact, mentally incompetent, sentence would not have been imposed and a new trial would have been ordered.
The final point argued by appellant, that she was entitled to a directed verdict of not guilty, is not well taken. The evidence of guilt was more than ample and fully supports the jury’s verdict.
Affirmed.
RODGERS, P. J., and PATTERSON, SUGG and BROOM, JJ., concur.