PATTERSON, Chief Justice, for the Court:
The Sheriff of Yalobusha County petitioned the Youth Court of the Second Judicial District of that county to find Danny Wayne Pettit, a minor of sixteen years, delinquent and to commit him to a training *1354 school or to other appropriate supervised care. Pettit was charged with driving under the influence of alcohol following an automobile accident in which a youthful passenger in the car was fatally injured.
On October 25, 1976, a youth court proceeding was conducted in which it was established that on August 4, 1976, Pettit, Charles Winters and Tony Allred, sixteen years of age, were riding in an automobile driven by Pettit. They drove to the home of Susanne Davis and, seeing no one at home, continued their drive. As they descended a steep gravel roadway, the brakes of the automobile malfunctioned leaving Pettit unable to stop the car or to turn into a paved road at the foot of the hill. The ear crossed the intersection, jumped a ditch, and rolled over into a field, killing Tony Allred.
About 11:00 p. m. the deputy sheriff was called to the scene several miles south of Water Valley, Mississippi. This officer smelled beer on Pettit’s breath and arrested him for driving under the influence. Officer Watson of the Water Valley Police Department administered an intoximeter test to Pettit which registered 0.12, indicating intoxication. After the car was towed into town, the deputy tested the brakes and found they were inoperable. He stated: “I did go back to the vehicle and tried the brakes, and the brake pedal would go all the way to the floor. It didn’t appear to have any brakes on it.”
The court asked the appellant’s mother the following question among others:
BY THE COURT: Did you tell him about driving without brakes?
A. He said that he didn’t know that he didn’t have any until he got on the brakes and he didn’t have any much.
Charles Winters also testified about the brakes. His testimony was that he, Pettit and Allred drove by Susanne Davis’ home because Allred had dated her, and continued:
Q. You went to Larry Davis’ house, then?
A. We didn’t stop, you know, we just drove up there, by there, and we didn’t see no cars there, and so we were going down the road, and we seen the other road, down the gravel road, and then he hit his brakes and he said there wasn’t no brakes, and I said hold on—
Q. You said “he”. Who was driving?
A. Danny.
Q. Danny was driving?
A. Yes, sir.
Q. Whose car was it?
A. Danny’s.
Q. About when was it that he hit the brakes?
A. I’m not for sure the exact time, but it was way before we got to the end of the road, you know. He hit it and then pumped it, and there wasn’t no brakes, and that’s when he said there wasn’t any brakes and he just kept on pumping.
Q. Did he put it in gear?
A. I don’t know, sir. Then we went across the road, and all I remember was flipping, and I don’t remember nothing else.
* * * * * *
Q. Now, you say that Danny — did you feel him pumping the brakes?
A. I think I heard him pumping them, and then that’s when he told me, you know, after he pumped them the first time, and I said, “hold on”.
% sf: sf: ^
Q. At any rate, you did hear Danny say that his brakes wouldn’t hold, that he didn’t have any brakes?
A. Yes, sir.
Q. And you grabbed onto the dash, and were holding onto that with your eyes closed.
A. Yes.
Q. And the next thing you knew, the car had turned over?
A. Yes.
# * * * * *
Q. Danny wasn’t driving at an excessive rate of speed, was he?
A. No, sir, he wasn’t going fast.
*1355 Q. It was just an unavoidable accident? Is that what you would say it was?
A. Yes, sir.
The court adjudicated Danny Pettit to be delinquent and directed that an earlier youth court file be made a part of this record. It discloses that Pettit had previously been adjudicated delinquent when thirteen years old for aiding an escaping felon. For this former delinquency Pettit was placed on probation from which he was favorably discharged in 1974.
At the conclusion of the hearing the court placed Danny Pettit in the custody of an uncle and took the case under advisement. At a later proceeding, but without additional testimony, the court committed Pettit to Oakley Training School until he should reach twenty years of age or until further orders of the court.
On appeal it is urged:
1. The lower court erred in admitting into evidence the results of the intoximeter test.
2. The order committing appellant to the state training school was cruel and unusual punishment in violation of the United States Constitution and the Constitution of the State of Mississippi, and
3. The lower court erred and was manifestly wrong in committing the appellant to the state training school due to an unavoidable accident.
The first assignment of error is directed to the qualifications of Officer Watson to give an intoximeter test. However, the officer’s qualifications are in accord with statutory standards and the test appears to have been given in conformance with Mississippi Code Annotated section 63-11-19 (1972) which states in part as follows:
A chemical analysis of the person’s breath, blood or urine, to be considered valid under the provisions of this section, shall have been performed according to methods approved by the state board of health and the commissioner of public safety and performed by an individual possessing a valid permit issued by the state board of health for making such analysis.
We find no factual or legal basis to sustain this assignment of error.
This Court addressed appellant’s second assignment of error of whether a commitment to the training school was cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and Section 28 of the Mississippi Constitution (1890) in In Interest of Wilder, 347 So.2d 520 (Miss.1977). There three thirteen-year-old youths were adjudicated delinquent for falsely reporting that a bomb had been placed in a school and were committed to a training school until they should attain the age of twenty years or until earlier orders of the court. The penalty for the offense was no more than one year imprisonment and no more than $500 fine or both. In that case the youths could potentially have been deprived of their freedom for seven years. This Court noted the distinction between the penal statutes and the juvenile delinquency statutes observing that the latter are in lieu of the penalty of imprisonment and are designed to aid a youthful defendant by providing specialized, selective treatment for rehabilitation. The present commitment is greater than the limits of Section 63-11-31 (1972), six months imprisonment or $500 fine. However, Wilder, supra, controls and we find no merit in this assignment.
Lastly, appellant argues the sentence was manifestly wrong and calls our attention to Mississippi Code Annotated section 43-21-19 (1972) which permits discretionary alternatives upon a finding of delinquency as follows:
(1) Place the child under supervision in his own home or in the care of a relative, under such terms as the court shall determine and direct, or
(2) Place the child in a suitable family home, or commit him to the custody of a suitable private institution or agency able and willing to receive him; or if adjudged delinquent, may commit the child to the custody of a state-supported training school.
*1356 It is established law in cases involving a child’s loss of freedom that the proof must establish beyond a reasonable doubt each and every essential element of the charge. In Interest of Napp, 273 So.2d 502 (Miss.1973). In our opinion there is no reasonable doubt that Pettit was driving under the influence. We do have considerable doubt and therefore concern as to whether this youth was committed to the training school for driving under the influence of alcohol or whether the lengthy, albeit lawful, commitment resulted from his companion’s unfortunate death. Our solicitude results from the uncontradicted brake failure causing the accident. The evidence suggests no connection between the drinking and the accident.
As in Wilder, supra, we are unable to say the youth court abused its discretion in committing the appellant to a training school and the judgment is affirmed. However, the case is remanded and the youth court is directed to hear additional evidence concerning the behavior and attitude of the appellant from the date of the commitment order until the present for determination as to whether it should be modified. We have no alternative because of the language of the court in committing this youth:
It would have been better had he kept himself redeemed instead of getting into this awful situation in which he got himself on this night when the Allred boy gave up his life as a result of his driving, whether it resulted from defective brakes or whether it resulted from driving while under the influence of “slop” — another meaning for beer — or a combination of both of them.
As mentioned, we find no evidence to support a finding of delinquency emanating from the death of Tony Allred and therefore no reason for a sentence based upon it. We do not condone the delinquency of driving under the influence, but we do think the commitment should be proportionate to that transgression.
AFFIRMED AND REMANDED.
INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.