489 So.2d 1382 (1986)
Robert E. LEE
v.
STATE of Mississippi.
No. 55637.
Supreme Court of Mississippi.
May 21, 1986.
Rehearing Denied July 9, 1986.
Michael A. Courteau, Vicksburg, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and DAN M. LEE and ROBERTSON, JJ.
DAN M. LEE, Justice, for the Court.
Robert E. Lee was tried and convicted in the Circuit Court of Warren County for the sale and transfer of a controlled substance, phenmetrazine  sold under the trade name "Preludin." Lee was sentenced to and is currently serving a term of fifteen (15) years in the custody of the Mississippi Department of Corrections.
From his conviction and sentence, Lee appeals and makes the following assignment of error:

*1383 The testimony of third parties who were not present during a conversation which was electronically transmitted without the knowledge or consent of the appellant and without the issuance of a search warrant should not have been admitted into evidence.
On February 27, 1984, Robert Lee sold four tablets of phenmetrazine to Eunice Combs for $100.00. Unbeknownst to Lee, Mr. Combs was working at that time as a confidential informer for the Mississippi Bureau of Narcotics. Also, Combs was wearing a concealed audio transmitter that evening which allowed several police officers to monitor the particulars of the transaction. No search warrant had been issued in connection with this action. It is the admission into evidence of the testimony of those officers which forms the basis of this appeal.
Sometime prior to the evening of February 27, 1984, Robert Lee and Eunice Combs had made arrangements for Combs to purchase 100 phenmetrazine tablets from Lee for $2,000.00. Combs was ostensibly to be making the purchase for a female friend, Angela Lee  actually an agent of the Mississippi Bureau of Narcotics.
Pursuant to plan, at approximately 7:15 p.m. on February 27, 1984, Combs rode with Angela Lee to Robert Lee's home in Vicksburg in order to obtain the pills. Angela Lee remained in the automobile some distance from Robert Lee's home while Combs approached and entered the residence. Angela Lee was able to listen to the sounds being broadcast by the transmitter concealed on Combs's body. Simultaneously, other bureau agents, Warren County Sheriff Officers and Vicksburg police officers also were able to monitor the transmission from nearby seclusion.
After Combs arrived at Robert Lee's residence, Lee's wife informed him that her husband had gone to the store. She then invited Combs into the house. Robert Lee returned only moments later.
Robert Lee informed Combs that the 100 tablets would not be available until the following day. However, Lee did indicate that he had four pills readily available at a price of $25.00 each.
Combs returned to Agent Angela Lee and ascertained that they would proceed with the purchase. Angela Lee gave Eunice Combs a one hundred dollar bill with which he was to pay for the pills. Combs returned to Robert Lee's house and consummated the transaction. Subsequently the four pills were turned over to Agent Lee.
Robert Lee was arrested two or three days later. The one hundred dollar bill used to purchase the drugs was never recovered.
At trial, in addition to Eunice Combs, two Mississippi Bureau of Narcotics officers and a Vicksburg police officer were allowed to testify concerning the transaction and conversation between Robert Lee and Eunice Combs which took place in Robert Lee's home on February 27, 1984. The testimony of the officers should have been excluded, Lee asserts, as it was the result of impermissible search and violative of his justifiable and constitutionally protected expectation of privacy. Appellant Lee bases his argument specifically on the Fourth Amendment to the U.S. Constitution and Section 23 of the Mississippi Constitution.

I.
In On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), reh. den. 344 U.S. 848, 73 S.Ct. 5, 97 L.Ed. 659 (1952), testimony of a government agent was deemed admissible in a federal narcotics case. That testimony pertained to damaging admissions made by the accused during a conversation which had taken place on his business premises. The government agent had been able to overhear the conversation via a radio transmitter concealed on the person of the other party to the conversation, an informer who was an acquaintance and former employee of the accused.
The Court held that such did not violate the constitutional immunity of the accused from unreasonable searches and seizures where the other party to the conversation *1384 had entered the premises with the consent or by the implied invitation of the accused. The primary rationale employed by the court was that neither the informant nor the government agent had committed any trespass.
Additionally, the Court pointed out that the defendant had been talking confidently and indiscreetly with one he trusted and had been overheard due to the aid of a transmitter and receiver. It was noted that such had the same effect on his privacy as if the monitoring agent had been eavesdropping outside an open window. The Court explained that the use of bifocals, field glasses, or a telescope to magnify the object of a witness's vision is not a forbidden search or seizure, even if the witness focuses upon what one supposes to be private indiscretions. The Court also said that it would be of dubious service to the genuine liberties protected by the Fourth Amendment to make them bedfellows with spurious liberties improvised by farfetched analogies which would liken eavesdropping on a conversation, with the connivance of one of the parties, to an unreasonable search or seizure.
The primary rationale of On Lee was rejected in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In Katz the defendant was convicted of transmitting wagering information by telephone. At trial the government was permitted, over the defendant's objection, to introduce evidence of the defendant's end of the telephone conversations. F.B.I. agents had monitored those conversations by an electronic recording device attached to the outside of the public telephone booth from which the defendant placed his calls.
The Supreme Court reversed the conviction and abandoned the On Lee rationale which looked to whether the electronic "bugging" of a location constituted a trespass in order to determine whether fourth amendment rights had been violated. Instead, the Court focused upon the justifiable expectations of privacy of the person whose conversation was monitored.
Perhaps the most important relevant U.S. Supreme Court case is United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). During a narcotics prosecution, the trial court overruled the accused's objections to testimony by government agents regarding conversations between the accused and an informant which the agents overheard by monitoring the frequency of a radio transmitter concealed on the informant's person. One of those conversations had taken place in the home of the accused. Id. at 747, 91 S.Ct. at 1124, 28 L.Ed.2d at 456. The Court of Appeals reversed the resulting conviction on the ground that the evidence was inadmissible under Katz. In a plurality opinion, the United States Supreme Court reversed. Five members of the Court, although not agreeing on an opinion, agreed that the Katz decision was improperly given retroactive effect. Five members also appear to have agreed on the Fourth Amendment question:
Justice Black ... concurred with the four man plurality on the broad ground that eavesdropping by electronic means does not constitute a search or seizure within the meaning of the Fourth Amendment. White is, therefore, authorative on the constitutional validity of recording and transmitting devices on the person. See United States v. Bonanno, 487 F.2d 654, 657 n. 1 (2nd Cir.1973).
United States v. Horton, 601 F.2d 319, 321 n. 1 (7th Cir.1979). It is therefore apparent that appellant Lee can place little reliance on our federal constitution. See also, Annot. 59 L.Ed.2d 959, 992-999 (1980).

II.
Obviously, protections afforded by the constitution of our state may exceed those guaranteed by the federal constitution. See, Stringer v. State, 491 So.2d 837 (Miss. 1985); Penick v. State, 440 So.2d 547, 551 (Miss. 1983). Section 23 of the Mississippi Constitution states in part, "The people shall be secure in their persons, houses, and possessions, from unreasonable seizure and search." However, the cases in our state which address the issue of search and seizure as it pertains to electronic *1385 surveillance do not strongly undergird the appellant's position.
In Everett v. State, 248 So.2d 439 (Miss. 1971), the accused went to the home of the informant in an attempt to obtain money by false pretense. Law enforcement officers were hidden near the informant's home and listened to a transmission of the ensuing conversation by a radio device hidden on the informant. The accused was arrested shortly thereafter. The primary distinction to the case sub judice is that the informant here went to the home of the accused, Robert Lee.
In Everett this Court distinguished the situation which it faced from that in Katz on the basis of the consent of one of the parties (i.e., the informant) to the compromised conversation:
The fourth amendment, protection of privacy ... is restricted to private conversations of nonconsenting parties. Electronic surveillance, "bugging," does not tread upon constitutional rights of the fourth amendment when the consent of one of the parties is first obtained. The expectation of privacy, though perhaps shaken by the mistaken belief that a person to whom one voluntarily confides will not reveal the conversation, does not reach constitutional proportions. Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).
Everett, 248 So.2d at 443.
In Ladner v. State, 276 So.2d 686 (Miss. 1973), a motel room reserved and paid for by an undercover agent was the scene of an illicit amphetamine sale. Other officials, who had observed the transaction through a hole in a curtain and had listened by means of an electronic device, then entered the room and arrested the defendant. After conviction and appeal, this Court held that the defendant's right to privacy was not invaded by the eavesdropping officers. The Court, quoting from Everett and White, said:
Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize. But if he has no doubts, or allays them, or risks what doubt he has, the risk is his... . Given the possibility or probability that one of his colleagues is cooperating with the police, it is only speculation to assert that the defendant's utterances would be substantially different or his sense of security any less if he also thought it possible that the suspected colleague is wired for sound. At least there is no persuasive evidence that the difference in this respect between the electronically equipped and the unequipped agent is substantial enough to require discrete constitutional recognition, particularly under the Fourth Amendment which is ruled by fluid concepts of "reasonableness."
Ladner, 276 So.2d at 687-688.
In Moore v. State, 291 So.2d 187 (Miss. 1974), law enforcement officials placed an electronic transmitting device on an informant who then entered a place of business known as the "Lighthouse." An ensuing conversation with one later accused of burglary was monitored by the police. Officers who were listening to the conversation via the "bug" were allowed to testify at trial. The resulting conviction was appealed and the appellant contended, inter alia, that the trial judge erred by permitting an officer to testify regarding the transmitted conversation. This Court dealt with the question almost summarily:
We have had an opportunity to study this question heretofore, and we have held that this type of evidence is admissible. (citations to Ladner and Everett) We think this testimony was admissible in the instant case.
Moore, 291 So.2d at 190.
Appellant Lee endeavors to distinguish all of the above mentioned Mississippi cases on the basis of the official eavesdropping having transpired at a location other than the defendant's home. He refers to Moss v. State, 411 So.2d 90 (Miss. 1982) where this Court said:
The fourth amendment protects the individual privacy in a variety of settings. *1386 In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home... . That language unequivocally establishes the proposition "[a]t the very core [of the fourth amendment] stands the right of a man to retreat to his own home and there be free from unreasonable governmental intrusion."
Id. at 94. quoting, Payton v. New York, 445 U.S. 573 589-590, 100 S.Ct. 1371, 1381-1382, 63 L.Ed.2d 639, 653 (1980).
We are of the opinion that little more can be said to augment the observation of Sir Edward Coke: "[T]he house of every one is to him as his castle and fortress, as well for his defence against injury and violence, as for his repose." Semayne's Case, 5 Co.Rep. 91(a), 91(b), 77 Eng.Rep. 194, 195. Nonetheless, in the present case, the difference to which appellant refers does not compel a different conclusion.
In Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), an informer misrepresented his identity to the defendant and was invited into the defendant's home to conduct illegal narcotics transactions. During two of the informer's visits such transactions were consummated; the narcotics obtained were subsequently admitted into evidence at trial. On appeal, the Supreme Court noted:
Without question, the home is accorded the full range of fourth amendment protections. (citations omitted) But when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street.
Id at 211, 87 S.Ct. at 427, 17 L.Ed.2d at 316.
In short, the overwhelming weight of authority is that pre-arrest consensual participant monitoring of a conversation does not violate privacy rights protected by either Section 23 of our state Constitution or the Fourth Amendment to the United States Constitution. No other rights were asserted or considered on appeal.
The case is therefore affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.