583 So.2d 188 (1991)
In the Interest of S.C.[1]
v.
STATE of Mississippi.
No. 90-CA-0621.
Supreme Court of Mississippi.
June 19, 1991.
Joe Sam Owen, Gulfport, for appellant.
Woodrow W. Pringle, III, Gulfport, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
*189 ROBERTSON, Justice, for the court:

I.
This appeal charges that we consider whether and under what circumstances our Constitution allows public school officials to search a student's locker. The case arises in an ugly setting, all too familiar today, but still one that should not occur: a high school student has a gun at school.
We affirm the delinquency adjudication below and hold en route public school officials have authority to search a student's locker without a warrant so long as they otherwise have reasonable grounds therefor.

II.
S.C. was born on August 22, 1973, and lives with his grandparents in Long Beach, Mississippi. S.C.'s mother is in the Navy. He does not know his father. For some four years prior to the Spring of 1990, S.C. had been with his mother in Norfolk, Virginia, where she was based. That spring S.C.'s mother went to sea, and he came to Long Beach to stay with his grandparents. He enrolled in the eleventh grade in Long Beach High School.
S.C. arrived at school on the morning of April 20, his third day in Long Beach. He saw a student named Derek Laster and offered to sell Laster two handguns, but Laster declined. At about noon, Laster reported this to an assistant principal, who asked that he inquire whether S.C. had the guns on the campus. Laster sought out S.C. and asked if he had the guns at school, and S.C. replied, "Yes." Laster then reported this to the assistant principal.
The assistant principal then contacted a colleague, and the two obtained S.C.'s locker number and went to the locker, only to find it securely locked. The two assistant principals then went to the classroom where S.C. was a student and asked him to step outside and return to the locker. They asked S.C. if he would open the locker with his key, and he complied. They found a black bag hanging in the locker. One of the assistant principals picked up the bag, unzipped it, and removed the two guns.
S.C. was then taken to the school office, and school officials called his grandparents and the police. The present proceedings followed. In the end, the Harrison County Family Court adjudged that S.C. is a delinquent child. Miss. Code Ann. §§ 43-21-105(i) and (j) and 97-37-1 and -17 (1972). The Court ordered S.C. delivered to the custody of the Department of Human Services for transfer to the Juvenile Training School at Oakley.

III.
The Family Court may not adjudge a child delinquent until the prosecution has proved each and every element of the offense beyond a reasonable doubt. Miss. Code Ann. § 43-21-561(1) (1972); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). See also, In re S.B. v. State, 566 So.2d 1276, 1278 (Miss. 1990); In re W.B., 515 So.2d 1175, 1176 (Miss. 1987); In re Pettit v. State, 351 So.2d 1353, 1356 (Miss. 1977); In re Napp, 273 So.2d 502, 503 (Miss. 1973). Our normal scope of review obtains, albeit the Family Court sits without a jury, and we may not reverse if there is substantial credible evidence in the record from which the Court could have found beyond a reasonable doubt that S.C. is a delinquent child. In the Interest of T.L.C. v. Washington County Dept. of Human Services, 566 So.2d 691, 701 (Miss. 1990); Collins v. Lowndes County Public Welfare Department, 555 So.2d 71, 72 (Miss. 1989).
There is no question but that on the afternoon of April 20, two assistant principals at the Long Beach High School escorted S.C. to his hall locker and opened it and found a black bag containing two handguns. These facts implicate Miss. Code Ann. § 97-37-17 (1972), which declares it unlawful for "a student of any ... school" to
carry, bring, receive, own, or have on the ... school grounds, ... any weapon the carrying of which concealed is prohibited, ... .
Miss. Code Ann. § 97-37-1 (1972) lists the weapons, the carrying of which concealed *190 is prohibited, and includes a "pistol, revolver ... or any fully automatic firearm or deadly weapon... ." A child's violation of the statute subjects him to adjudication of delinquency. Miss. Code Ann. §§ 43-21-105(i) and (j) (1972).
S.C. challenges the finding that the two guns were weapons proscribed by the statute. We do not take the point seriously. A photograph in the record certainly makes them appear conventional and lethal handguns. The Family Court personally inspected the guns and found them a .32 caliber revolver and the other a .22 caliber revolver, respectively. Whether an object is a deadly weapon is a question for the fact-finder. Davis v. State, 530 So.2d 694, 700 (Miss. 1988); Duckworth v. State, 477 So.2d 935, 938 (Miss. 1985). On this record, the Court's finding that they were weapons and, specifically, revolvers within Section 97-37-1 is beyond our authority to disturb.
S.C. has made a rather feeble effort to deny that the guns were his. His first story was that, on the morning in question, a "white dude" had asked him to keep the bag in his locker and that S.C. had agreed to do this, not knowing what was in the bag. He was offered the opportunity to identify this white student in the high school annual but to no avail. S.C. was then allowed to peruse the school halls and grounds in search of this student but never found him.
This story persuading no one, S.C. then claimed that the bag had originally been his, that he had brought it to school with a hat, some deodorant and cologne in it, and had sold it to a Vietnamese student for five dollars. Later that day, S.C. said the Vietnamese student asked him to keep the bag in his locker and S.C. agreed, having no idea that the Vietnamese boy had put the two pistols in it.
The evidence reflects that S.C. had exclusive possession of the locker and that he kept it under lock and key. The guns were found in the locker. This is sufficient to show that S.C. had the guns "on the ... school grounds." The Family Court was within its prerogative in rejecting S.C.'s assorted stories, first, that a "white dude" had given him the bag (in which the guns were concealed), and, second, that a Vietnamese student had asked him to keep the bag. All of this is particularly true in light of the very credible testimony of fellow student Derek Laster.

IV.

A.
S.C. next challenges the search of his locker. He argues that the school officials had no authority to enter his locker without a search warrant and, furthermore, that they lacked probable cause sufficient to obtain a warrant or to conduct the search. Beyond this, he argues that the circumstances were not sufficiently exigent that a warrantless search was justified. On these grounds he argues the guns were illegally seized and that the prosecution should not have been allowed to produce the guns in evidence.
We begin with the premise that school officials have broad authorities with which our law will brook little interference, and disciplining student offenders is among these authorities. See, e.g., Warren County Board of Education v. Wilkinson, 500 So.2d 455 (Miss. 1986); Clinton Municipal Separate School District v. Byrd, 477 So.2d 237, 240-42 (Miss. 1985). Still, the Supreme Court has reminded us that, via the Fourteenth Amendment, the Bill of Rights protects schoolchildren from a school board's unlawfully arbitrary exercise of power. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). Referring to school boards, the Barnette Court uttered these oft quoted words:
These [school boards] have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights. That they are educating the young for citizenship is reason for scrupulous protection of constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles *191 of our government as mere platitudes.
Barnette, 319 U.S. at 637, 63 S.Ct. at 1178, 87 L.Ed. at 1637. Significantly, the Supreme Court invoked this premise as its polestar principle at the outset of its most prominent utterance upon the standards to which public school officials are held when searching students and seizing their property. New Jersey v. T.L.O., 469 U.S. 325, 334, 105 S.Ct. 733, 738-39, 83 L.Ed.2d 720, 729-30 (1985). See also, Warren County Board of Education v. Wilkinson, 500 So.2d at 459-60; Clinton Municipal Separate School District v. Byrd, 477 So.2d at 240-47.
These thoughts well in mind, we consider the report Derek Laster gave the school officials reasonable grounds to search S.C.'s locker. It is true that the Fourth Amendment's strictures against unreasonable searches and seizures apply on the school yard, New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). T.L.O. held, however, that warrants are not required there, i.e., "the warrant requirement, in particular, is unsuited to the school environment: ... .," T.L.O., 469 U.S. at 340, 105 S.Ct. at 742, 83 L.Ed.2d at 733, and that school searches generally should depend for their legality upon "the reasonableness, under all the circumstances, of the search." T.L.O., 469 U.S. at 341, 105 S.Ct. at 742, 83 L.Ed.2d at 734. Though the Court declined to address specifically the criteria for judging searches of "lockers, desks, or other school property provided for the storage of school supplies," T.L.O., 469 U.S. at 337, n. 5, 105 S.Ct. at 740, n. 5, 83 L.Ed.2d at 732, n. 5, we think it fair to say that this case falls within the principle T.L.O. announces. The search of S.C.'s locker was reasonable under the circumstances and offends no federal standard. See Commonwealth v. Carey, 407 Mass. 528, 554 N.E.2d 1199 (1990).

B.
Notwithstanding, the present search is challenged under this state's constitutional prohibition against unreasonable searches and seizures. Our attention is directed specifically to Miss.Const. Art. 3, § 23 (1890) which reads:
Section 23. The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized.
We take the point seriously, for we have heretofore scrupulously held periodic federal (re)interpretations of the Fourth Amendment do not necessarily compel rereadings of our own Constitution. See Lee v. State, 489 So.2d 1382, 1384 (Miss. 1986); Penick v. State, 440 So.2d 547, 552 (Miss. 1983); compare Lee v. State, 435 So.2d 674, 676 (Miss. 1983).
Our beginning point is that which T.L.O. declined to address: whether a school child has a legitimate expectation of privacy in his locker. The reasons why we must say "Yes" are supplied in T.L.O.'s description of high school "reality."
Students at a minimum must bring to school not only the supplies needed for their studies, but also keys, money, and the necessaries of personal hygiene and grooming. In addition, students may carry on their persons or in purses or wallets such nondisruptive yet highly personal items as photographs, letters, and diaries. Finally, students may have perfectly legitimate reasons to carry with them articles of property needed in connection with extracurricular or recreational activities. In short, schoolchildren may find it necessary to carry with them a variety of legitimate, noncontraband items, and there is no reason to conclude that they have necessarily waived all rights to privacy in such items merely by bringing them onto school grounds.
T.L.O., 469 U.S. at 339, 105 S.Ct. at 741, 83 L.Ed.2d at 733. These "realities" prevail in this state's schools, and because they do, we may only hold that, within the contemplation of Section 23 of our Constitution, students have a reasonable expectation of *192 privacy in their school lockers. Cf. State v. Engerud, 94 N.J. 331, 349, 463 A.2d 934 (1983); State v. Michael G., 106 N.M. 644, 748 P.2d 17 (App. 1987); In Interest of Dumas, 357 Pa.Super. 294, 297, 515 A.2d 984 (1986); State v. Joseph T., 336 S.E.2d 728, 736 (W. Va. 1985). This is but a simple function of the mandate that students no less than others shall be "secure in their ... possessions."
Of course, our Constitution does not mandate absolute security, only reasonable security, that is, security from "unreasonable seizure and search." Suffice it to say that the student's expectation of privacy in a school locker is considerably less than he would have in the privacy of his home or even, perhaps, his automobile. Because that interest is less than in these other circumstances, and because it necessarily clashes with the broad discretionary authority and responsibility of the school officials, a lesser showing is required before school officials may have authority to search a student's locker.
Section 23 permits reasonable searches. Indicia of reasonableness are the rules regulating possession of contraband and defining items one may not bring to school. Sections 97-37-1 and -17 in tandem declare criminal the act of bringing pistols and revolvers to the campus or possessing such weapons thereon. We know that school authorities may "make and enforce a rule against bringing weapons to school." Mitchell v. Board of Trustees of Oxford Municipal Separate School District, 625 F.2d 660, 663 (5th Cir.1980). Against this backdrop, information that a student may have a gun at school reasonably suggests school officials should search out the truth of the matter.
Section 23 ordinarily requires a warrant which may issue only upon probable cause. Superficially, today's facts suggest the normal procedure be followed, as no one suggests S.C. was carrying pistols on his person. On the other hand, high school students change classes every hour and ordinarily have access to their lockers between classes. There were more than 900 teenage boys and girls at school on April 20, and the assistant principals proceeded prudently when they procured S.C. from the classroom and with his consent searched his locker, eschewing the more elaborate process of seeking a warrant from a presiding magistrate. Suffice it to say a sensitive appreciation of the circumstances suggested an exigency such that we except Section 23's warrant proviso.
Of prime importance is the reasonableness of the assistant principals' belief that S.C. had two pistols at school that day. Derek Laster, S.C.'s fellow student, was their sole source of information. Laster had told the assistant principals that S.C. had told him he had the guns with him. He had tried to sell the guns to Laster, although Laster had not actually seen them. In the larger world we expend considerable judicial energy searching out the reliability of informants and the basis of their knowledge. We do this because experience has taught that informants often act out of self interest and, more generally, they are not among our more reliable citizens. On more than one or two occasions, there has been no informant. High school students would seem to fall into a different and generally less suspect class. Absent information that a particular student informant may be untrustworthy, school officials may ordinarily accept at face value the information they supply.
Here Laster reported to the assistant principal that S.C. had offered to sell him two handguns. The assistant principal asked Laster to verify that S.C. had the guns at school. Laster returned a while later and reported he had talked to S.C., and S.C. had confirmed he had the guns at school. A responsible school official under the circumstances would and should have regarded this information sufficient that he take action. The school officials had reasonable grounds to search S.C.'s locker without a warrant, and we do not reach the questions whether under Section 23, S.C. gave an effective consent to search or whether under such circumstances a minor can give a legally effective consent.
We find no state constitutional infirmity in the assistant principals' search of S.C.'s *193 locker nor in their seizure of the two handguns therefrom. The Family Court committed no error when it received the guns as evidence.

V.
S.C. finally argues his "confession" was obtained illegally and hence was inadmissible. Alford Reyer, investigator for the city of Long Beach, took a statement from S.C. Prior to giving the statement, Reyer advised S.C. of his rights. S.C. told Reyer he was represented by counsel and did not wish to give a statement. Reyer then obtained a court order authorizing him to take S.C. to the school to identify the person who gave him the bag. Before they left, Reyer again advised S.C. of his rights.
After S.C. could not locate the student who gave him the bag, Reyer again asked S.C. if he wished to give a statement. This time, S.C. agreed. When Reyer and S.C. returned to the police station, Reyer advised S.C. of his rights and after making some phone calls, S.C. gave a statement. The statement provided:
I get to school about 7:45 each morning. When I arrived I went straight to my locker to get some books and to put a black bag in my locker which contained a orange hat, a stick of deodorant and some cologne. While I was at my locker, a [sic] Oriental boy approached me who I had seen many times before and asked if he could buy my black bag for $5 and I said of course. I gave him the bag and he gave me the money. I left the deodorant and cologne in the bag and just took my hat out. I didn't see him anymore until lunch but we didn't speak. I saw him later on that day during 2nd 10 minute break and he asked me if he could put the bag in my locker until after school because he didn't feel like carrying it around. There was only one more period to go so I said okay. I keep a lock on my locker so I figured he wouldn't be worried about it. He left after that and then I left because the bell was about to ring. I met up with some friends and went to class. I was only in class for about 5 or ten minutes when some counselor came to get me. We walked to my locker and told me to open it. Some other teachers were present. They saw the bag and told me to open it. There were 2 guns in it and I told them that they weren't mine.
It is certainly true there are special rules regarding confessions and inculpatory statements by youthful offenders, and these rules must be respected. See In Interest of W.R.A., 481 So.2d 280, 284-87 (Miss. 1985). The short answer today is that while S.C.'s statement may be remotely incriminating, we consider it harmless, as what S.C. said is so obviously a cock and bull story. See e.g., Cannady v. State, 455 So.2d 713 (Miss. 1984).
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Pursuant to Miss. Code Ann. § 43-21-201 et seq. (1972), the case at bar is deemed confidential. See also, Miss. Code Ann. § 43-21-651 (1972); In re R.R.B., 394 So.2d 907, 908 (Miss. 1981). Cf. Miss.R.Civ.P. 81(a)(3) (Youth Court matters governed by statutory procedures). Accordingly, the initials S.C. are used throughout this opinion to protect the youth's identity. The lower court should be admonished for allowing the child's name to appear on court records. In re R.R.B., 394 So.2d at 908.