OPINION
In this timely appeal, Ricardo Joseph ("Appellant") challenges the judgment entered by the Youngstown Municipal Court finding him guilty of the misdemeanor offense of criminal simulation for selling counterfeit compact discs. Based on the record, this Court must affirm the trial court's decision in all respects.
On April 19, 2000, officers from the Youngstown Police Department's Vice Unit and Joseph Ramsak, a private investigator with the Anti-Piracy Unit of the Recording Association of America, were conducting surveillance at the Four Seasons Flea Market in Youngstown. (Trial Tr. pp. 13, 32, 43). Police were drawn to that location due to reports that some vendors were selling counterfeit compact discs ("CDs"). (Trial Tr. p. 11).
Appellant was one of the many vendors selling merchandise at the flea market.
Police watched as Appellant sold CDs from a display table. One officer purchased a C.D. from Appellant entitled Sweet Kisses by an artist named Jessica Simpson for $6.00. (Trial Tr. p. 22). The officer gave the C.D. to Investigator Ramsak, an expert in the identification of counterfeit merchandise. (Trial Tr. pp. 44-47). Investigator Ramsak compared the C.D. to an identical one purchased from a record store and noted that the C.D. duplicated the same front cover picture, back cover picture, copyright stamp, song list, and bar code that would appear on a legitimate version of this CD. (Trial Tr. pp. 54-55).
Nevertheless, because the graphics on Appellant's C.D. lacked the crispness and clarity of legitimate products, Ramsak concluded that the disc was, "a good attempt to imitate the legitimate product," and, therefore, a counterfeit. (Trial Tr. p. 54). The police report arising from this incident described the C.D. as follows:
 "Counterfeit and sold illegal due to no spine identifier, poor quality of printing and graphics, poor quality of shrink wrap, green tint on the back of C.D. and very low price." (Trial Tr. p. 29).
Police cited Appellant for selling counterfeit compact discs. Appellant's case was set for trial on July 28, 2000. Three days beforehand, Appellant filed a Motion to Suppress/Dismiss. On the day of trial the trial court summarily disposed of the suppression motion, sua sponte dismissing it as untimely. (Trial Tr. p. 3).
After a bench trial the court found Appellant guilty of criminal simulation. On September 28, 2000, the trial court imposed a sentence of 90 days in jail, all suspended; imposed two years of probation; ordered Appellant to pay a fine of $500.00 plus court costs and restitution to the Recording Association of America in the amount of $250.00. Appellant filed his Notice of Appeal on September 28, 2000. The trial court stayed Appellant's sentence pending the outcome of this appeal.
In his first assignment of error, Appellant states the following,
 "WHETHER A PERSON CAN BE CONVICTED OF A VIOLATION OF O.R.C. 2913.32 WHEN THE STATE HAS PRESENTED NO EVIDENCE THAT THE ACCUSED HAS DECEIVED, ATTEMPTED TO DECEIVE, NOR DEFRAUDED OR ATTEMPTED TO DEFRAUD ANY CONSUMER OF HIS PRODUCT."
Appellant challenges the legal sufficiency of the evidence against him. Sufficiency, "is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally insufficient to support the jury verdict as a matter of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433, and Crim.R. 29(A). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id.; citing State v. Robinson (1955), 162 Ohio St. 486.
Determining the sufficiency of the evidence at trial requires that the court of appeals review all probative evidence and the reasonable inferences drawn from them in a light most favorable to the prosecution. In that light, the court must ascertain whether any rational trier of fact could have found all the elements of the crime charged proven beyond a reasonable doubt. State v. Reed (1988), 128 Ohio App.3d 520, 522.
Appellant was charged with the offense of criminal simulation which prohibits the following:
 "(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 "(1) Make or alter any object so that it appears to have value because of antiquity, rarity, curiosity, source or authorship, which it does not in fact possess;
 "(2) Practice deception in making, retouching, editing, or reproducing any photograph, movie film, video tape, phonograph, or recording tape;
"* * *
 "(4) Utter, or possess with purpose to utter, any object that the person knows to have been simulated as provided in division (A)(1), (2), or (3) of this section.
 "(B) Whoever violates this section is guilty of criminal simulation. Except as otherwise provided in this division, criminal simulation is a misdemeanor of the first degree * * *." R.C. § 2913.32.
In proving the offense of criminal simulation, the prosecution must demonstrate that the perpetrator acted with specific intent to defraud the consumer. In other words, the perpetrator must, "knowingly obtain, by deception, some benefit for [him]self or another, or to knowingly cause, by deception, some detriment to another." R.C. § 2913.01(B); Statev. Journey (Feb. 10, 1993), 4th Dist. No. 92 CA 2077. The specific intent to defraud may be inferred from the circumstances surrounding the case.State v. Marshall (April 5, 1991), 11th Dist. No. 89-L-159.
R.C. § 2913.01(A) defines "deception" as follows:
 ". . . knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
 State v. Bay (Aug. 9, 1999), 12th Dist. No. CA98-11-110 (addressing the offense of theft by deception).
Appellant argues that the record contains no evidence to support the allegation that he was trying to deceive anyone with his merchandise. He claims that the CDs displayed at his flea market booth were of poor quality and, at $6.00, were so inexpensive that no one could have reasonably believed that they were anything more than what Appellant held them out to be: copies of the original discs, not the originals themselves. (Appellant's Brf. p. 5).
There is little authority to guide us in the application of Ohio's criminal simulation statute. Interpretations of comparative regulations outside this jurisdiction are equally unhelpful. Appellant directs this Court to its decision in State v. Demos (Sept. 1, 1998), 7th Dist. No. 94 C.A. 132, one of the few cases to address the statute in any depth.
In Demos, the defendant owned an establishment known as Tony's Merchandise Outlet, a recognized purveyor of imitation designer brand name handbags and jewelry. Police arrested the store owner after executing a search warrant that sought the seizure of "counterfeit" designer clothing and accessories sold at defendant's store. Id. at p. 3. Like Appellant, the store owner in Demos moved to suppress the items seized. There, the trial court granted the store owner's motion to suppress the items because the warrant that prompted their seizure was issued without probable cause. Id. at 6. In affirming that decision, this Court agreed that the store owner could not be guilty of criminal simulation where he freely advised customers that his apparent brand name merchandise was fake. Id.
Seizing upon this Court's conclusion that the store owner in Demos was not deceiving his customers, Appellant maintains that Demos controls our resolution of his case. Based on the record here, we disagree. There are critical factors in the instant case that distinguish it from Demos. For one thing, while Appellant may not have overtly touted his merchandise as authentic, he was certainly not forthright about the fact that his CDs were copies, either.
Moreover, examination of the C.D. introduced against Appellant at trial reflects that someone took pains to produce a reasonable facsimile, not only of the C.D. itself, but of the CD's cover as well. For example, Appellant's C.D. cover is formatted identically to the original and includes the cover's copyright information and bar code. (Trial Tr. pp. 54-55). Even with the low sale price, it is certainly conceivable, even likely, that such copies could deceive consumers, causing them to believe that they were purchasing originals at bargain prices.
The criminal simulation statute was enacted in part to prohibit the production of counterfeit merchandise. See, R.C. § 2913.32, Legislative Service Commission Commentary. The trial court in the instant case examined the evidence, heard the witnesses and concluded that Appellant was selling counterfeit merchandise to consumers. The record fully supports that conclusion. Thus, Appellant's first assignment of error is overruled.
In his second assignment of error, Appellant maintains the following:
 "WHETHER THE POLICE OFFICERS VIOLATED DEFENDANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES IN VIOLATION OF THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION."
This assignment of error also lacks merit. To begin with, this Court notes that the issue has been waived. Under Crim.R. 12(C), all pretrial motions, except motions for discovery and those seeking a bill of particulars, must be filed within thirty-five days after arraignment or seven days before trial, whichever is earlier. Appellant's motion, filed 97 days after his initial court appearance and three days before trial was not timely. The trial court did not abuse its discretion by summarily denying it as untimely. State v. Robertson, 9th Dist. No. C.A. 20565, 2002 Ohio 316; citing Akron v. Milewski (1985), 21 Ohio App.3d 140, 142.
Even if Appellant had not waived consideration of his motion to suppress, he would not have prevailed on the motion. The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. Evidence seized in violation of that right will be excluded from criminal prosecutions. Mapp v. Ohio (1961), 367 U.S. 643, 647. Key to anyFourth Amendment analysis is whether the intrusion was reasonable under the circumstances. United States v. Chadwick (1977), 422 U.S. 1, 7.
In the instant case, the officers seized merchandise on display in an open-air flea market after they cited Appellant for selling counterfeit merchandise. Appellant had no expectation of privacy in items that he knowingly exposed to the public. See Lewis v. United States (1966),385 U.S. 206, 210. In Lewis, the defendant moved to suppress narcotics seized from his home after the defendant showed them to a police officer who was disguised as a willing purchaser of narcotics. The defendant argued that the intrusion was unreasonable under the circumstances because the officer was in his home under false pretenses.
The Supreme Court in Lewis disagreed. The Court found that the officer's conduct did not offend the constitution where the defendant willingly invited him into his home and displayed the contraband for purchase. Critically, the Court observed:
 "[W]hen, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street." Id. at 211.
Appellant's C.D. enterprise, publicly transacted in an open-air flea market, was entitled to no privacy protection. See also, State v.Simmons (March 29, 1996), 2nd Dist. No. 14845 (no reasonable expectation of privacy in a license plate displayed on a car parked on a public street). Accordingly, Appellant's second assignment is also overruled.
Since we have overruled both of Appellant's assignments of error, this Court hereby affirms the judgment of the Youngstown Municipal Court.
Donofrio, J., and Vukovich, P.J., concur.